Kathryn PAPAGEORGIOU and John (Ioannis) D. Papageorgiou, Plaintiffs,

v.

P. A. ESPERDY, District Director of Immigration and Naturalization Service, Defendant.

United States District Court
S. D. New York.
Jan. 2, 1963.

John F. Martin, New York City, for plaintiffs.

Vincent L. Broderick, U. S. Atty., for Southern District of New York, New York City, Roy Babitt, Sp. Asst. U. S. Atty., of counsel, for defendant.

WEINFELD, District Judge.

The District Director moves for summary judgment in this action brought by plaintiffs, husband and wife, to review the Attorney General's order denying to the husband "nonquota immigrant" status which was sought on the basis of the wife's citizenship.[1] The further claim is made that deportation will result in hardship to him and to the wife, who is now pregnant. The plaintiffs seek a preliminary injunction staying execution of the deportation warrant pending final determination of this action.

The husband entered the United States in 1956 as a seaman, overstayed his leave and, upon appropriate proceedings, was found deportable, but was granted the privilege of voluntary departure. Within two weeks thereafter, and before leaving our shores, he married an American citizen. He then left for Greece where, as the husband of an American citizen, he was granted a nonquota visa, based on the wife's petition.

In June, 1957 he re-entered the United States on that visa. Two months later the marriage was dissolved pursuant to a Mexican divorce decree. Thereafter, the Attorney General commenced a deportation proceeding wherein it was charged and found that the marriage was a sham and had been entered into for the sole purpose of enabling the husband to re-enter the United States as the spouse of an American citizen and that his nonquota status and re-entry had been effected through such fraudulent means.[2] The alien was found deportable, but again was granted the privilege of voluntary departure. The date of his departure was thereafter extended from time to time. During the last extension the alien married the plaintiff wife, a native born citizen of the United States. Thereafter, on June 27, 1962, the wife filed a petition with the Attorney General, claiming that her husband was entitled to a nonquota immigrant status under the Act.[3] The District Director, acting for the Attorney General, denied the application as a matter of law. He held that action was foreclosed by reason

1. 66 Stat. 166 (1952), 8 U.S.C. § 1101 (a) (27) (A) (1958).

2. 66 Stat. 204 (1952), 8 U.S.C. §§ 1251(a) (2) and (c).

3. 66 Stat. 180 (1952), 8 U.S.C. § 1155 (b).

of the previous determination that the husband's first marriage had been contracted fraudulently for the purpose of gaining entry as the spouse of a citizen. His conclusion that he was without authority to act upon the petition was based upon an amendment to section 1155(c) of Title 8, United States Code, effective September 26, 1961.[4] The Board of Immigration Appeals sustained the ruling and dismissed the wife's appeal.

The 1961 amendment provides:

"Notwithstanding the provisions of this subsection, no petition shall be approved if the alien previously has been accorded, by reason of marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws—

"(1) a nonquota status under section 1101(a) (27) (A) of this title as the spouse of a citizen of the United States, * * *."[5]

The plaintiffs contend that the Attorney General's denial of relief as a matter of law, and not in the exercise of discretion, is an erroneous construction of the amendment. Of course, if the Attorney General does have discretionary power to grant relief, but fails to exercise his discretion, this would constitute arbitrary conduct.[6] Plaintiffs' position is that section 1155(c) withheld from the Attorney General authority to approve a nonquota status by reason of relationship only if he found that the marriage of a petitioner (here the co-plaintiff and second wife) and an alien was entered into for the purpose of evading the immigration law; and since the alien's marriage to his present wife is not challenged as fraudulent and is valid, the denial of the wife's petition is arbitrary. In short, the plaintiffs assert that the amendment

refers only to an existing marriage which is the basis of the application for nonquota status—that it does not refer to a prior marriage. To adopt this construction is to fly in the face of plain and unmistakable language. The reference is to the alien having been "previously" accorded a nonquota status by reason of a marriage found to have been entered into for the purpose of evading the immigration laws. Such was the Attorney General's finding with respect to the alien's first marriage.

■ The situation here presented comes directly within the ban of the amendment. The alien's first marriage was found to be sham, to have been entered into for the purpose of evading the immigration laws; the nonquota status was accorded to him on the basis of that fraudulent marriage.

The purpose of the amendment was to put a stop to the very type of conduct here engaged in by the alien. Congress was concerned with the "increasing number of fraudulent acquisitions of nonquota status through sham marriages between aliens and U. S. citizens."[7] It had the undoubted right to withdraw from the Attorney General the power to approve a current petition for nonquota status where an alien had previously been accorded the same status on the basis of fraudulent conduct, and that is just what this statute does. Only a distortion of this plainly expressed and unambiguous provision would lead to the interpretation which plaintiffs urge. To uphold their view would be tantamount to a repeal of the Act.

Without the amendment, the Attorney General had ample authority under the existing law to challenge an existing marriage which was the basis of a current petition for nonquota status, since the

4. 66 Stat. 180 (1952), as amended, 75 Stat. 650 (1961), 8 U.S.C. § 1155(c) (Supp. III, 1959–61).

5. Ibid. . . .

6. See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

7. House of Representatives, Committee on the Judiciary, Report, H.R. No. 1086, 87th Cong., 1st Sess. (1961). Reprinted in U.S.Code & Admin.News pp. 2950, 2980 (1961).

section provided for his approval after investigation "if he determines the facts stated in the petition are true." Thus, to adopt petitioner's construction would mean that no real purpose was served by the amendment and its reference to "if the alien previously has been accorded \* \* \* a nonquota status."[8] The District Director properly held there was lack of authority to grant the petition.

■ The plaintiffs make the further contention that if the Attorney General is correct in his interpretation of the amendment, it offends the constitutional prohibition of the Eighth Amendment against cruel and unusual punishment. Here it is argued that to force the husband to leave the country will deprive the wife, a native born American citizen, of his support and society and the yet unborn child of its father. The power of Congress to decide the conditions under which the aliens may enter and remain in the United States is beyond challenge.[9] Where provisions of various immigration acts work hardship upon an alien's relatives or the alien himself, Congress has, in certain instances, provided for amelioration.[10] There is no basis for holding that its failure to provide against the burden imposed upon the wife in consequence of her marriage to an alien who had gained entry into the United States through a prior marriage found to have been fraudulently contracted for the sole purpose of such entry constitutes cruel and unusual punishment.[11]

■ Undoubtedly her problem is a difficult one, but her personal plight, even though she be innocent of wrongful conduct, creates no constitutional barrier to the statute. Cases which upon their individual facts were far more appealing than those here presented were found without constitutional infirmity.[12]

Defendant's motion for summary judgment is granted.

8. *Compare* 66 Stat. 180 (1952), 8 U.S.C. § 1155(c) *(1958) with* 75 Stat. 650 (1961), 8 U.S.C. § 1155(c) (Supp. III, 1959–61).

9. Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 73 S.Ct. 625, 97 L. Ed. 956 (1953); Harisiades v. Shaughnessy, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 (1952); The Chinese Exclusion Case, Chae Chan Ping v. United States, 130 U.S. 581, 9 S.Ct. 623, 32 L.Ed. 1068 (1889).

10. E. g., 66 Stat. 214 (1952), as amended, 8 U.S.C. § 1254 (1958) and 8 U.S.C.A. § 1254 (1962 Cum.Supp.).

11. Cf. Swartz v. Rogers, 103 U.S.App.D.C. 1, 254 F.2d 338, cert. denied, 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1372 (1958).

12. See Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 73 S.Ct. 625, 97 L. Ed. 956 (1953); United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317 (1950).