**Application of Robert J. AMOURY, as next of friend and on behalf of Primo Marco Antonio Mussumeci, an infant.**

**On the Petition of Robert J. Amoury for Declaratory Judgment.**

**No. 69 Civ. 3186.**

United States District Court
S. D. New York.

Dec. 11, 1969.

Robert J. Amoury, Staten Island, N. Y., for applicant.

Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York, New York City, for the Immigration and Naturalization Service; Daniel Riesel, Sp. Asst. U. S. Atty., of counsel.

EDWARD WEINFELD, District Judge.

This proceeding has been instituted on behalf of an infant, a citizen of the United States, to stay the deportation of his parents, natives and citizens of Italy, who entered the United States on January 4, 1968. The infant acquired United States citizenship upon his birth here on September 21, 1968.[1]

The parents entered the United States together as nonimmigrants. The father was admitted on visitor status until January 31, 1968.[2] The mother was admitted as a ten-day in transit visitor without visa until January 14, 1968, upon representation that she was on her way to Canada via Northeast Airlines.[3] The American Consul at Palermo, Italy, had refused to grant the wife a nonimmigrant visa to accompany her husband, since he was concerned they would attempt to remain in the United States permanently, a concern which has been confirmed by events that bring the matter before this Court.

The father has relatives in the United States: his parents (the infant's grandparents), permanent resident aliens who have applied for but will not be eligible to receive their citizenship until, at the earliest, February 1, 1971; two brothers (uncles of the infant), United States citizens; and a sister (the infant's aunt), also a citizen of the United States, who has filed a fifth preference visa petition for the infant's parents.[4] Twenty-six days after the parents' arrival, a private bill was introduced in the House of Representatives for their admission to permanent residence. This, together with still another such bill, was reported upon adversely by the House Judiciary Committee on July 9, 1968.

On March 14, 1968, the Immigration Service commenced proceedings for the deportation of the parents, alleging they were deportable as nonimmigrants who had violated the terms of their immigration.[5] However, a hearing was not held until more than a year later, on April 18, 1969, due to the introduction of the bills referred to above, and repeated adjournments granted at the request of the aliens' counsel. At the hearing the aliens conceded they were deportable, but requested and were granted the privilege of voluntary departure[6] within three months, by July 18, 1969, failing which they would be deported. Instead of voluntary departure by that date, the aliens' counsel brought this proceeding on behalf of the aliens' infant son.

The action is one for a declaratory judgment[7] for a determination of the rights of the infant as they may be affected by the order of deportation. In substance the relief sought is a permanent stay of the deportation order upon the ground that to deport the infant's parents will deprive the infant of his rights as a citizen of the United States under the due process and the equal protection guarantees of the Constitution.

Initially, the government seeks dismissal of the action for lack of jurisdiction over the subject matter. It con-

---

1. 8 U.S.C. § 1401(a)(1) (1964).

2. 8 U.S.C. § 1101(a)(15)(B) (1964).

3. 8 U.S.C. § 1101(a)(15)(C) (1964).

4. 8 U.S.C. § 1153(a)(5) (Supp.IV, 1969). However, immigrant visa numbers under the numerical limitation for Italy are not available.

5. 8 U.S.C. §§ 1251(a)(2), 1251(a)(9) (1964).

6. 8 U.S.C. § 1254(e) (1964).

7. 28 U.S.C. §§ 2201–2202 (1964).

tends that while the action seeks a determination under the Declaratory Judgment Act, the substance of the requested relief involves a review of agency action. Accordingly, the government argues that jurisdiction to review the order of deportation must derive, if at all, from the Administrative Procedure Act.[8] That Act may be invoked only upon a showing that the infant suffered a "legal wrong because of agency action" or that he has been "adversely affected or aggrieved by agency action within the meaning of a relevant statute."[9] The government's position is that the deportation order is directed only toward the infant's parents; that as to them its validity is beyond challenge; that as to the infant it is of no binding effect. But this misconceives the claim advanced on behalf of the infant. Realistically, it is not the validity of the order itself which is at issue, but rather the effect of its implementation by the execution of a warrant of deportation. Although the infant, as an American citizen, has an uncontested legal right to remain in this country, if the order is enforced he must either suffer to be separated from his natural parents (an unlikely event in view of his tender years) or leave with them—in violation, it is contended, of his constitutional rights, privileges and immunities. In practical terms, the impact of the order expends its force as much upon the infant as upon the parents. Thus, even accepting arguendo the government's position that subject matter jurisdiction derives from the Administrative Proce-

dure Act, the action may be maintained. While it may be conceded that the validity of the deportation order, qua order, forecloses a claim by the infant of a "legal wrong because of agency action," in the final analysis he is "aggrieved by agency action within the meaning of a relevant statute" sufficiently so to be entitled to judicial review thereof, for the Immigration Service, acting under the same statute which assures him citizenship (the Immigration and Nationality Act of 1952[10]) in practical terms, it is contended, denies him the incidents of such citizenship.[11]

Section 10 of the Administrative Procedure Act has been liberally construed to cover a "broad spectrum of actions," and the Supreme Court repeatedly has emphasized that its " 'generous review provisions' must be given a 'hospitable' interpretation."[12] Also, the Court has not hesitated to permit aliens to test the legality of orders of the Immigration Service in both expulsion[13] and exclusion[14] cases in declaratory judgment actions brought under the Administrative Procedure Act. A fortiori, citizens should be entitled to challenge such orders where it is contended that the enforcement thereof would result in violation of their constitutionally protected rights. The motion to dismiss for lack of subject matter jurisdiction is denied.[15]

■ The defendant next moves to dismiss the complaint upon the merits for failure to state a claim upon which relief can be granted. The essence of the constitutional claim asserted on behalf of

---

8. Administrative Procedure Act § 10, 5 U.S.C. §§ 701–706 (Supp.IV, 1969).

9. 5 U.S.C. § 702 (Supp.IV, 1969).

10. 8 U.S.C. § 1401(a) (1) (1964).

11. *Cf.* Pennsylvania R.R. v. Dillon, 118 U.S.App.D.C. 257, 335 F.2d 292, *cert. denied sub nom.* American-Hawaiian S.S. Co. v. Dillon, 379 U.S. 945, 85 S.Ct. 437, 13 L.Ed.2d 543 (1964); Jaffe, *Standing to Secure Judicial Review: Private Actions*, 75 Harv.L.Rev. 255 (1961).

12. Abbott Laboratories v. Gardner, 387 U.S. 136, 140–141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967).

13. Shaughnessy v. Pedreiro, 349 U.S. 48, 75 S.Ct. 124, 99 L.Ed. 693 (1955).

14. Brownell v. Tom We Shung, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225 (1956). However, in 1961, Congress enacted section 106(b) of the Immigration and Nationality Act, Pub.L. 87–301, § 5, 75 Stat. 653 (1961) (codified at 8 U.S.C. § 1105a (b) (1964)), which contracted the scope of judicial review in the instance of final orders of exclusion. *See also* Foti v. Immigration & Nat. Serv., 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963).

15. *Cf.* Hom Sin v. Esperdy, 239 F.Supp. 903 (S.D.N.Y.1965).

petitioner is that if his parents are deported he will necessarily be forced to go with them against his will unless he remains with the relatives who are lawfully here, an unlikely event in view of his tender years; that his departure under such circumstances would not be voluntary but compelled, and since he was not a party to the deportation proceeding, it violates his right to due process of law. Although the indirect impact of the order is sufficient to satisfy the jurisdictional requisites of section 10 of the Administrative Procedure Act, on the merits the claim of denial of due process is without substance. The deportation proceeding was not predicated upon any charge with respect to the infant; consequently he was not entitled to notice or a hearing with respect to the claim that his parents had remained in the United States beyond the time permitted upon their entry. The order of deportation is not directed toward him and obviously no action is contemplated under its terms with respect to him. It is all too true that ofttimes individuals, entirely innocent of wrongful conduct, suffer equally with those who commit the wrongful act which brings penalties in its wake. But this does not mean that a constitutional violation has been visited upon the innocent person. It is not required that the procedural due process due an accused must also be accorded to those who may be affected by the final result of proceedings against the accused.

■ Equally lacking in substance is the further asserted claim that if the infant's parents take him with them he will be denied the equal protection of the laws. The contention is not clearly articulated, but appears to be that the infant, a citizen of the United States, will be deprived, until his parents may regain entry here, of the standard of living and education afforded to other United States citizens of his age and status who continue to reside here. However, there has not been the slightest showing that this is an invidious discrimination or arbitrary classification by the government.[16] The situation which confronts the infant is due to no act or conduct of the government. It exists because of the conduct of the infant's parents which renders them deportable. The citizen infants of other aliens remain here because their parents are not deportable.

Congress' power to prescribe conditions under which aliens may enter and remain in the United States cannot be doubted,[17] even though their enforcement may impose hardship upon the aliens' children or other members of the family.[18] The situation that exists in the instant case—alien parents admitted on visitor or transit visas, a citizen child born during their temporary stay followed by a petition by the new citizen for permanent resident status of his "immediate relatives"—was not unanticipated by Congress.[19] Yet Congress did not deem the citizenship of an infant and likely deportation of the parents a circumstance requiring preferential quota treatment for the parents. In expanding the quotas available to "the immediate relatives of United States citizens,"[20] Congress specifically provided that the term " 'immediate relatives' * * * shall mean the children, spouses, and parents of a citizen of the United States: *Provided,* That in the case of parents, such citizen must be at least twenty-one years of age."[21] An attack upon this

---

16. *Cf.* Gruenwald v. Gardner, 390 F.2d 591, 592 (2d Cir.), *cert. denied sub nom.* Gruenwald v. Cohen, 393 U.S. 982, 89 S.Ct. 456, 21 L.Ed.2d 445 (1968).

17. Galvan v. Press, 347 U.S. 522, 529–532, 74 S.Ct. 737, 98 L.Ed. 911 (1954); Hitai v. Immigration & Nat. Serv., 343 F.2d 466 (2d Cir.), *cert. denied,* 382 U.S. 816, 86 S.Ct. 36, 15 L.Ed.2d 63 (1965).

18. Mendez v. Major, 340 F.2d 128, 131–132 (8th Cir. 1965); *see* United States *ex rel.* Hintopoulos v. Shaughnessy, 233 F.2d 705 (2d Cir. 1956), *aff'd,* 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957).

19. *See* Faustino v. Immigration & Nat. Serv., 302 F.Supp. 212, 215–216 (S.D. N.Y.1969).

20. 8 U.S.C. § 1151(a) (Supp. IV, 1969).

21. *Id.* § 1151(b).

provision as an arbitrary classification as between American citizens under and over the age of twenty-one years was recently rejected.[22]

The humanitarian appeal in the instant case is far less compelling than that posed in other cases where it was found no constitutional infirmity existed in effecting the deportation order.[23] Nothing more need be said on this score than that the situation which now exists was created by the aliens who, from the time of their admission here, embarked on a program to gain preferential status not accorded them by law. While their desire to remain here is understandable, it does not justify short-circuiting our laws. The simple fact is that to uphold the claim here asserted " 'upon the accident of birth in the United States of their son would be to deprive others, who are patiently awaiting visas under their already oversubscribed quotas.' "[24]

The motion to dismiss the petition is granted. The temporary restraining order is vacated.

22. Faustino v. Immigration & Nat. Serv., 302 F.Supp. 212 (S.D.N.Y.1969).

23. *See* Swartz v. Rogers, 103 U.S.App. D.C. 1, 254 F.2d 338, *cert. denied*, 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1372 (1958); Papageorgiou v. Esperdy, 212 F. Supp. 874 (S.D.N.Y.1963). *See also* Mendez v. Major, 340 F.2d 128 (8th Cir. 1965).

24. United States *ex rel.* Hintopoulos v. Shaughnessy, 353 U.S. 72, 74–75, 77 S.Ct. 618, 620 (1957).