Carlos ACOSTA, et al., Plaintiffs,

v.

John J. GAFFNEY, acting District Director, INS, Defendant.

Civ. A. No. 76–709.

United States District Court,
D. New Jersey.

May 12, 1976.

Linda Atlas, Brooklyn, N. Y., for plaintiffs.

Jonathan L. Goldstein, U. S. Atty., D. N. J., by Carolyn Arch, Asst. U. S. Atty., Newark, N. J., for defendant.

## OPINION

STERN, District Judge.

This is an action to review an order of the Immigration and Naturalization Service denying the application of plaintiffs Carlos and Beatriz Acosta for a stay of deportation. Plaintiffs also seek a declaratory judgment of the invalidity of the order of deportation and the denial of the stay application on grounds that those orders violate plaintiffs' constitutional rights.

The Court has jurisdiction of the action for review of the order denying the stay of deportation, pursuant to Section 10 of the Administrative Procedure Act, Title 5 United States Code, § 702. The Court's jurisdiction extends not only to the petition for review by the plaintiff parents, but also to the petition of the infant plaintiff, who is clearly "adversely affected or aggrieved" by the deportation order and the denial of the stay. *Application of Amoury,* 307 F.Supp. 213 (S.D.N.Y.1969) (Weinfeld, J.). Since the Court has jurisdiction under the Administrative Procedure Act, the action for declaratory relief within the context of the petition for review lies as well. Title 28 United States Code, § 2201; *cf.* Wright *Federal Courts,* § 100, at 449.

This action was commenced by the filing of a complaint on April 20, 1976. By order to show cause dated April 21, 1976, the Court set May 11, 1976 for a hearing on the issue whether a preliminary injunction against the deportation of plaintiffs Carlos and Beatriz Acosta should issue, pending the Court's determination of the substantive issues raised by the complaint, and issued a temporary restraining order against the deportations pending the May 11th hearing.

The essential facts of the case are not in dispute. As formulated by the government:

1. On October 21, 1972, plaintiff Carlos Acosta, then single, a native and citizen of Colombia, was admitted to the United States, at New York, New York, as a nonimmigrant visitor authorized to remain as such until October 31, 1972.

2. Said plaintiff, however, did not leave the United States on or after October 31, 1972, but remained, and still remains here without authority.

3. On November 23, 1974, plaintiff Beatriz Acosta, then single, a native and citizen of Colombia, was admitted to the United States, at New York, New York (under the name of Maria Dolores Beatriz Mesa Velaquez), as a nonimmigrant visitor authorized to remain as such until December 5, 1974.

4. Said plaintiff, however, did not leave the United States on or after December 5, 1974, but remained, and still remains here without authority.

5. On December 25, 1974, the said plaintiffs became married to each other, in Jackson, New Jersey.

6. Thereafter, on August 25, 1975, the defendant, in deportation proceedings instituted against plaintiffs, issued Orders to Show Cause to them, charging in each that each plaintiff remained in the United States as a nonimmigrant for a longer time than permitted under Section 101(a)(15) of the Immigration and Nationality Act, 8 U.S.C. 1 [1101], *et seq.,* and ordered them to appear for a hearing

before an Immigration Judge, in Newark, New Jersey, on September 9, 1975, and show cause why they should not be deported from the United States as charged.

7. Prior to such issuance, defendant was advised, through a note received from one Louis A. Schwarz, M.D., A.C. O.G., P.A., dated August 11, 1975, with respect to plaintiff Beatriz Acosta who was then pregnant, as follows:

"Expected date of confinement: Sept. 7. She should not travel at this time.

s. L.A. Shwarz, M.D."

8. Thereafter, on September 23, 1975, plaintiff Lina M. Acosta was born to the plaintiffs.

9. Thereafter, on October 10, 1975, deportation proceedings against the adult plaintiffs proceeded on the Order to Show Cause before Immigration Judge Aaron I. Maltin who found, after hearing, and on the basis of said plaintiffs' admissions, that plaintiffs are deportable as charged and, in lieu of deportation, at plaintiffs' request, granted them Voluntary Departure at their own expense, on or before February 1, 1976. Plaintiffs waived appeal (to the Board of Immigration Appeals).

10. Thereafter, pursuant to plaintiffs' application, on February 13, 1976, the adult plaintiffs were granted an immigrant visa priority date of December 3, 1975.

11. Thereafter, on February 20, 1976, the defendant received the plaintiffs' application for stay of deportation, coupled with an application seeking non-priority status based on the following circumstances set forth on their behalf by Willie Salesky, Esquire, signed by Linda Atlas, as of counsel:

(a) The adult plaintiffs are the parents of a United States citizen born on September 9, 1975.

(b) The infant child is five months old and, to be uprooted at this tender age would impose a hardship on the family.

(c) Plaintiff, Carlos Acosta, is employed as a shipping clerk, earning $175.00 per week. If he is forced to return to Colombia he will have difficulty finding work to support his family. Further, that there is no system of welfare benefits in Colombia and the Acosta family would be faced with economic hardship if Mr. Acosta cannot immediately find work in Colombia.

(d) Plaintiff, Carlos Acosta, contributes to the support of his citizen niece and nephew and they would be deprived of his help if he is forced to return to Colombia.

(e) The adult plaintiffs' deportation constitutes an unconstitutional deprivation of equal protection, with respect to the infant plaintiff, in that she will be forced to leave with her parents.

12. On April 6, 1976, defendant denied plaintiffs' request for a stay, ruling that the facts they had set forth, 11., *supra*, did not constitute extreme hardship according to the criteria established by the Immigration and Naturalization Service, and advised plaintiffs that if they appeared at the Service's Newark Office on or before April 16, 1976 with tickets confirmed for their departure on or before that date, defendant would consider cancelling the Warrant of Deportation and allow them to depart voluntarily.

13. Thereafter, on April 21, 1976, plaintiffs filed the instant action for Declaratory Judgment (determining that the constitutional rights of the infant plaintiff are being violated by the deportation orders) and for judicial review, under the Administrative Procedures Act, 5 U.S.C. 1 [551], *et seq.,* on the ground that defendant abused his discretion in denying their request to stay deportation.

14. On said date, this Court, issued an Order to Show Cause directed to defendant, returnable May 11, 1976, at 10:00 A.M., (a) ordering him to show cause why, *pendente lite,* he should not be restrained from deporting the adult plaintiffs before May 11, 1976.

15. Also, on the same date, this Court directed counsel for the respective parties to submit and serve, simultaneously, an agreed statement of facts or, failing such, separate factual statements, together with a memorandum of law in support of their respective legal positions.

Brief of United States, at 1–5.

The Court notes the undisputed fact that plaintiff Carlos Acosta is gainfully employed as a shipping clerk, and that his wages support not only his wife and child but also his niece and nephew, both of whom are United States citizens. The government has proffered no evidence of criminality or other misconduct on the part of any of the plaintiffs, nor of any other characteristics which would render their continued presence in this country detrimental to the interests of the United States. *See, e. g.,* Title 8 United States Code, §§ 1182, 1251.

This case raises issues which have been considered by several of the Courts of Appeals but which, insofar as this Court has been able to determine, are of first impression in this Circuit.

■ Plaintiffs' primary claim is that deportation of the adult alien plaintiffs effects a discrimination against the citizen infant plaintiff, offensive to the Fifth Amendment of the United States Constitution. Though the Fifth Amendment contains no equal protection clause, as does the Fourteenth Amendment, it is well-established that "discrimination may be so unjustifiable as to be violative of due process." *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884, 886 (1954). Plaintiffs contend that plaintiff Lina Acosta, a five-month-old baby, will be effectively deprived of the incidents of her American citizenship if her parents are deported, specifically, the right to have her parents with her in this country. Lina suffers this detriment only because her parents are aliens, according to plaintiffs, and therefore suffers invidious discrimination on the basis of her national origin.

■ The Court rejects this Fifth Amendment claim. Plaintiff Lina Acosta is threatened with the deportation of her parents not because her parents are aliens, but because they are *deportable* aliens by reason of their voluntary conduct in violation of the laws of the United States. Every court which has considered the issue of the deportation of the parents of a citizen infant in the Fifth Amendment context has reached this conclusion, based on the principle of plenary Congressional power to regulate the entry of *aliens* into the United States. *See, e. g, Perdido v. INS,* 420 F.2d 1179 (5th Cir. 1969); *Faustino v. INS,* 432 F.2d 429 (2nd Cir. 1970), *cert. denied,* 401 U.S. 921, 91 S.Ct. 909, 27 L.Ed.2d 824 (1971); *Enciso-Cardozo v. INS,* 504 F.2d 1252, 1253 (2nd Cir. 1974); *Gonzalez-Cuevas v. INS,* 515 F.2d 1222, 1224 (5th Cir. 1975); *Qureshi v. INS,* 519 F.2d 1174 (5th Cir. 1975); *Application of Amoury,* 307 F.Supp. 213 (S.D.N.Y.1969).

None of the reported decisions, however, considers what this Court views as the compelling issue presented in this case: May the United States constitutionally compel a *citizen* to submit to deportation, *de facto* or *de jure*?

The Fourteenth Amendment provides in pertinent part:

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . . .

In *Perkins v. Elg,* 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320 (1939), the Supreme Court addressed the question of the citizenship of a person born in the United States of alien parentage. In an opinion by Mr. Chief Justice Hughes, the Court held:

On her birth in New York, the plaintiff became a citizen of the United States. Civil Rights Act of 1866, 14 Stat. 27; Fourteenth Amendment, Section 1, U.S. C.A.Const.; *United States v. Wong Kim Ark,* 169 U.S. 649 [18 S.Ct. 456, 42 L.Ed. 890]. In a comprehensive review of the

principles and authorities governing the decision in that case—that a child born here of alien parentage becomes a citizen of the United States—the Court adverted to the "inherent right of every independent nation to determine for itself, and according to its own constitution and laws, what classes of persons shall be entitled to its citizenship." *United States v. Wong Kim Ark,* supra, 169 U.S. page 668 [18 S.Ct. 456, 42 L.Ed. 890]. As municipal law determines how citizenship may be acquired, it follows that persons may have a dual nationality. [footnote omitted] And the mere fact that the plaintiff may have acquired Swedish citizenship by virtue of the operation of Swedish law, on the resumption of that citizenship by her parents, does not compel the conclusion that she has lost her own citizenship acquired under our law. *As at birth she became a citizen of the United States, that citizenship must be deemed to continue unless she has been deprived of it through the operation of a treaty or congressional enactment or by her voluntary action in conformity with applicable legal principles.*

307 U.S. at 328, 59 S.Ct. at 887, 83 L.Ed. at 1323. (Emphasis added).

■ Plaintiff Lina Acosta was born within the United States on September 23, 1975. The government concedes, as it must, that she is a citizen of the United States. *United States ex rel. Hintopoulos v. Shaughnessy,* 353 U.S. 72, 73, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957); *Perkins, supra,* 307 U.S. at 325, 59 S.Ct. at 884, 83 L.Ed. at 1320; *United States v. Wong Kim Ark,* 169 U.S. 649, 18 S.Ct. 456, 42 L.Ed. 890 (1898); *Dred Scott v. Sandford,* 60 U.S. (19 How.) 393, 576, 15 L.Ed. 691, 771 (1857) (dissenting opinion of Curtis, J.). In *Wong Kim Ark, supra,* Mr. Justice Gray wrote for the Court:

The fourteenth amendment of the constitution, in the declaration that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside," contemplates two sources of citizenship, and two

only,—birth and naturalization. Citizenship by naturalization can only be acquired by naturalization under the authority and in the forms of law. But citizenship by birth is established by the mere fact of birth under the circumstances defined in the constitution. Every person born in the United States, and subject to the jurisdiction thereof, becomes at once a citizen of the United States, and needs no naturalization.

. . .

The power of naturalization, vested in congress by the constitution, is a power to confer citizenship, not a power to take it away. . . . Congress having no power to abridge the rights conferred by the constitution upon those who have become naturalized citizens by virtue of acts of congress, a fortiori no act or omission of congress, as to providing for the naturalization of parents or children of a particular race, can affect citizenship acquired as a birthright, by virtue of the constitution itself, without any aid of legislation. The fourteenth amendment, while it leaves the power, where it was before, in congress, to regulate naturalization, has conferred no authority upon congress to restrict the effect of birth, declared by the constitution to constitute a sufficient and complete right to citizenship.

169 U.S. at 702–703, 18 S.Ct. at 477, 42 L.Ed. 890 at 909.

■ Because Lina Acosta is a citizen, Congress may not authorize, the executive may not effect and the courts will not permit her direct deportation. Deportation may be imposed only upon aliens. Title 8 United States Code, § 1251. *Cf. United States ex rel. Masucci v. Follette,* 272 F.Supp. 563, 565 (S.D.N.Y.1967).

■ The government contends, however, that Lina is *not to be deported; only her parents are.* As the government's own brief points out, however, at 9–10, at least one Court of Appeals has recognized that deportation of the alien parents of a citizen minor child results in the *de facto* deportation of that citizen child. *Aalund v. Mar-*

*shall,* 461 F.2d 710, 714 (5th Cir. 1972); *Gonzalez-Cuevas v. INS,* 515 F.2d 1222, 1224 (5th Cir. 1975). Where, as here, the citizen in question is a five-month-old infant, there is and could be no doubt that the simultaneous deportation of both parents will result in the deportation of this young citizen of the United States.

This result is repugnant to the Constitution. The Fourteenth Amendment creates only one class of citizens, and until that constitutional provision is changed, no act of any branch of government may deny to any citizen the full scope of privileges and immunities inherent in United States citizenship. Central to all of those rights, of course, is the right to remain.

*United States ex rel. Hintopoulos v. Shaughnessy,* 353 U.S. 572, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957), upon which the government relies, is no bar to the Court's action today. In that case the Supreme Court merely held that there had been no abuse of discretion under the facts of the case in the denial of an application for statutory suspension of deportation. The Court did not directly review the decision of the Board in a plenary capacity, but only within the limited abuse of discretion standard, and held that although the petitioners there had met the minimum qualifications for suspension of deportation under the statute, "the statute does not contemplate that all aliens who meet the minimum legal standards will be granted suspension. Suspension of deportation is a matter of discretion and of administrative grace, not mere eligibility; discretion must be exercised even though even though statutory prerequisites have been met." 353 U.S. at 77, 77 S.Ct. at 621, 1 L.Ed.2d at 656.

The Court went on to hold that the Board had not abused its discretion in that case, since the reasons on which the Board relied—that petitioners had established no roots or ties to this country—made its action neither capricious nor arbitrary. The Court did not pass on the effect of the deportation on the citizen five-year-old, for which it was taken to task by Mr. Justice

Douglas, joined by Mr. Justice Black, in dissent:

This case, on its face, seems to be an instance of a deportation which would "result in serious economic detriment to a citizen," as those words are used in § 19(c) of the Immigration Act of 1917.

The citizen is a five-year-old boy who was born here and who, therefore, is entitled to all the rights, privileges, and immunities which the Fourteenth Amendment bestows on every citizen. A five-year-old boy cannot enjoy the educational, spiritual, and economic benefits which our society affords unless he is with his parents. His parents are law-abiding and self-supporting. From this record it appears that they are good members of the community. They do not seem to have done anything illegal or antisocial that should penalize their American son.

It would seem, therefore, that the maintenance of this young American citizen in a home in America is the way to effectuate the policy of the 1917 Act.

. . . . .

The Board erroneously followed irrelevant standards instead of exercising its discretion under the applicable statute *viz.* § 19(c) of the 1917 Act.

353 U.S. at 79–80, 77 S.Ct. at 622, 1 L.Ed.2d at 657.

Though the instant plaintiffs did not apply for suspension of deportation, the effect of the order under review on the citizen child is even more severe than in *Hintopoulos.*

It may be that the policy considerations discussed by the Fifth Circuit in *Gonzalez-Cuevas, supra,* at 1224, militate toward a constitutional amendment limiting the granting of citizenship by birth to those whose parents are legally in the United States at the time of the infant's birth. It is not within this Court's province to speculate on the merits of that issue. What this Court will not do, however, is to use its view of legislative policy to countenance the outright destruction of the central privilege of an American citizenship already vested:

the right to live in the United States for as long as one sees fit.

If this result wreaks injustice on those other aliens " 'who are patiently awaiting visas under their already oversubscribed quotas' ", *Amoury, supra,* at 217, displacing two of these others because of existing quotas, the Service or the Congress has ample authority to ameliorate the hardship by relaxing the quota provisions of the Act to permit two more waiting applicants to immigrate. If that alternative is deemed inadvisable on a case-by-case basis, Congress may expand the investigative and enforcement resources of the Service to permit the swift detection and deportation of illegal aliens before they become the parents of American citizens. Plaintiff Carlos Acosta, it should be noted, remained here for three years in illegal status before the birth of his child. He could surely have been deported at any time between October 31, 1972 and September 23, 1975, without any constitutional complaint. Once plaintiff Lina Acosta was born, however, the Service was no longer free to do what it willed. It could not then deport the parents of an American citizen under circumstances which, as in the instant case, amount to the unconstitutional deportation of that citizen herself.

The result urged by the United States would permit the forcible expatriation of an infant American by her own government, requiring her to dwell abroad, without any suggestion that the child, or even her parents, has committed any hostile or antisocial act against that government.

Plaintiffs' only alternative if the government prevails here would be simply to abandon their five-month-old child to the care of the American public, virtually at the boarding gate, and to depart alone. The law will not recognize that to be any alternative at all.

The Court is aware that the laws of Colombia may well confer Colombian citizenship on Lina Acosta. Upon her majority, she may certainly choose to renounce her American citizenship and elect to become a citizen of Colombia, or indeed of any other country that will have her. Congress long ago declared, and the Supreme Court so held, that "the right of expatriation is a natural and inherent right of all people". *Wong Kim Ark, supra,* 169 U.S. at 704, 18 S.Ct. at 478, 42 L.Ed. at 910. If that choice is to be made, however, it must be made by Lina in the voluntary exercise of her free will at a time when she is competent to do so. It may not be imposed upon her by her government, whether directly or indirectly through her parents.

It should be noted that the Court cannot, on this record, reach the issue of the level of age and circumstances of a citizen child at which the deportation of his parents would no longer constitute the *de facto* deportation of the citizen. Various factors such as the citizen's age, whether he has any relatives legally residing here, his economic condition and prospects of support in the absence of his parents, and predicted psychological and spiritual effects on him of his parents' deportation, all taken in relation to one another, make precisely fixed categories impossible to project. The Court has no doubt, however, that there might well be cases where children are sufficiently mature and economically secure, and have sufficient other family in the United States, to remain in this country without the economic and spiritual support of parents. The Court does not intend its opinion to suggest that the alien parents of a citizen minor may never be deported without causing an unconstitutional deportation of the citizen child. It is enough for now to decide that Lina may not be deported, and that the deportation of her parents is, on this record, the deportation of Lina.

Accordingly, it is the opinion of this Court that the order of deportation of plaintiffs Carlos and Beatriz Acosta, and the denial of the stay of deportation, are "contrary to constitutional right, power, privilege or immunity," within the meaning of Title 5 United States Code, § 706(2)(B). The orders under review will be reversed and a declaratory judgment will issue declaring that the deportation of the parent plaintiffs constitutes an unconstitutional

deportation of the infant plaintiff, a citizen of the United States.