Jose M. LOPEZ and Albania G. Lopez, Plaintiffs,

v.

Jerry M. FRANKLIN, District Director, Immigration and Naturalization Service, Defendant.

Emiliano DURAN and Carolina Duran, Plaintiffs,

v.

Jerry M. FRANKLIN, District Director, Immigration and Naturalization Service, Defendant.

Civ. A. Nos. 6–72502 and 6–72558.

United States District Court, E. D. Michigan, S. D.

Feb. 28, 1977.

**346**

M. Hector Cisneros, Detroit, Mich., for plaintiffs.

Michele Coleman Mayes, Asst. U. S. Atty., Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT and FEIKENS, District Judges.

These individual cases were consolidated for purposes of a single hearing on two issues of constitutional significance common to both: (1) Whether § 201(b) of the Immigration and Nationality Act violates the Equal Protection Clause in permitting a native-born citizen over the age of 21 to sponsor the admission of his "immediate relatives" for purposes of permanent residency without regard to numerical limitations while denying such permission to a native-born citizen under the age of 21? (2) Whether the formal deportation of illegal alien parents infringes on the constitutional rights, privileges and immunities of their citizen-child?

There is a general agreement as to the factual situation in each of these cases. The plaintiffs in each action are aliens, citizens of Columbia and Mexico, respectively, who legally entered the United States several years ago on visitor's visas. In each instance, the husband and wife overstayed their allowed visitation time and upon apprehension by the Immigration and Naturalization authorities agreed to depart the country voluntarily rather than undergo formal deportation. In each instance, the couple did not abide by the agreement but rather stayed on illegally and gave birth to a child in this country. The families were subsequently apprehended by Immigration and Naturalization officials. An Immigration Board was convened which found them to be residing illegally in the United States and again ordered their deportation. An application for stay of the deportation order

was denied by defendant. Each couple retained counsel who on their behalf instituted an action in federal court, seeking a preliminary injunction against their deportation. As the issue in each case was identical, the courts have consolidated these actions for purposes of the plaintiffs' motions for preliminary injunction based on the constitutional issues [1] delineated above. Oral argument was heard by both judges in the courtroom of Judge John Feikens on Friday, January 21, 1977.[2]

### I.

■ Briefly restated: It is plaintiffs' contention that 8 U.S.C. § 1151(b) violates the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment according to native-born citizens over the age of 21 the privilege of sponsoring the immigration of their alien "immediate relatives" without regard to numerical limitations and waiting periods while not according a similar privilege to native-born citizens below the age of 21.

This issue was raised recently in an unpublished order of the Sixth Circuit, *Sotelo v. Immigration and Naturalization Service*, 492 F.2d 1244 (6th Cir., filed February 5, 1974). In that order, the Court of Appeals noted appellant's reliance upon this same argument for the unconstitutionality of 8 U.S.C. § 1151(b) and rejected the argument, relying on *United States ex rel. Hintopoulos v. Shaughnessy*, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957) and *Perdido v. Immigration and Naturalization Service*, 420 F.2d 1179 (5th Cir. 1969). This decision is controlling on the Court here and accordingly the plaintiffs' first ground for a preliminary injunction must be dismissed.

### II.

The plaintiffs pose the second issue as follows: "whether the United States can

---

1. Judge Feikens has previously ruled that the denial of the application for stay of deportation in his case was not an abuse of discretion. Judge Pratt now states that the same conclusion must be reached in his case based on the facts presented to the Court.

2. Hereinafter, this opinion will make reference to "the Court" which should be understood to mean the joint opinion of Judge Feikens and Judge Pratt for purposes of the consolidated motion.

constitutionally compel a citizen to submit to deportation, de facto or de jure?" (Emphasis added).

In *United States v. Wong Kim Ark*, 169 U.S. 649, 18 S.Ct. 456, 42 L.Ed. 890 (1898), the Supreme Court held that:

"[C]itizenship by birth is established by the mere fact of birth under the circumstances defined in the Constitution. Every person born in the United States, and subject to the jurisdiction thereof, becomes at once a citizen of the United States, and needs no naturalization.

\* \* \* \* \* \*

The power of naturalization, vested in Congress by the Constitution, is a power to confer citizenship, not a power to take it away . . . Congress having no power to abridge the rights conferred by the Constitution upon those who have become naturalized citizens by virtue of acts of Congress, a *fortiori* no act or omission of Congress, as to providing for the naturalization of parents or children of a particular race, can affect citizenship acquired by a birthright, by virtue of the Constitution itself, . . ."

It is manifest that deportation may not be imposed upon citizens born in the United States, but only upon aliens. 8 U.S.C. § 1251. Thus, it is clear that these citizen children may not be the subject of formal deportation orders of the Immigration and Naturalization Service.

This is not the precise issue here however. These actions are being brought by the alien parents of citizen-children, and the allegation is that deportation of the parents must, as a practical matter, result in the *de facto* deportation of these citizen-children as well. Plaintiffs contend that the *de facto* deportation of citizens, as well as *de jure* deportation, is violative of the Fourteenth Amendment.

In the first instance, the Court is reluctant to accept at face value plaintiffs' characterization of these actions as instances of "*de facto* deportation." "Deportation" is a term of art and is not synonymous with mere departure from the country. The term denotes an involvement by the federal government and means, in effect, an official expulsion. Thus, plaintiffs' use of the phrase "*de facto* deportation" tends to assume the federal government's responsibility for the effect of plaintiffs' formal deportation on their children, and this cannot be assumed. The responsibility of the federal government for indirectly causing the removal of plaintiffs' citizen-children is precisely the issue involved here. In short, this case must be decided upon its own facts, not upon some label such as "*de facto* deportation.*"

The government relies on *Perdido v. Immigration and Naturalization Service*, 420 F.2d 1179 (5th Cir. 1969) for the proposition that whatever description is applicable to these facts, the deportation of illegal alien parents of a citizen child does not deprive that child of any constitutional rights, even if the circumstances require that he accompany his parents back to their native lands. *Perdido* in turn relies on *United States ex rel. Hintopoulos v. Shaughnessy*, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957) and *Harisiades v. Shaughnessy*, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 (1952) for this rule. This Court's independent reading of the latter cases, however, indicates that they were decided solely on the question of whether denial of an application for stay of deportation was an abuse of discretion. Contrary to the government's argument, the constitutional issue herein was not raised or discussed by either the majority or dissenting opinions in *Hintopoulos*. For this reason, the persuasive position which would normally be accorded the *Perdido* decision is substantially undercut.

There are, however, several other appellate decisions to the same effect. As early as 1958 an analogous issue was decided by the United States Court of Appeals for the D.C. Circuit. In *Swartz v. Rogers*, 103 U.S. App.D.C. 1, 254 F.2d 338, 339, the court said:

"The second question is whether the marriage in 1942 gave the appellant wife a contract right or a marital status which is so protected by the due process clause of

the Fifth Amendment that her husband could not be deported by the retrospective application of a 1952 act of Congress. Appellants argue that the due process clause gave her a right, upon marriage, to establish a home, create a family, have the society and devotion of her husband, etc.; and that to deport her husband by the retrospective application of a statute would unconstitutionally destroy that marital status. But the essence of appellants' claim, when it is analyzed, is a right to live in this country. Certainly deportation would put burdens upon the marriage. It would impose upon the wife the choice of living abroad with her husband or living in this country without him. But deportation would not in any way destroy the legal union which the marriage created. The physical conditions of the marriage may change, but the marriage continues. Under these circumstances we think the wife has no constitutional right which is violated by the deportation of her husband."

In *Mendez v. Major*, 340 F.2d 128 (8th Cir. 1965), the court was confronted with essentially the same issue as that before this Court, and it stated:

"The contention of appellants that to enforce the two year residence abroad requirement would be in violation of their United States citizen son's constitutional rights is without substance. There can be no doubt that Congress has the power to determine the conditions under which an alien may enter and remain in the United States, . . .; even though the conditions may impose a certain amount of hardship upon an alien's wife or children." 340 F.2d at 131–32.

In *Gonzalez-Cuevas v. Immigration and Naturalization Service*, 515 F.2d 1222 (5th Cir. 1975), *Perdido, supra*, was followed, the court there stating:

"Petitioners, who illegally remained in the United States for the occasion of the birth of their citizen children, cannot thus gain favored status over those aliens who comply with the immigration laws of this nation. Any ruling which had this effect would stand those statutes on their heads . . . Two things are clear. (1) Legal orders of deportation to their parents do not violate any constitutional right of citizen children and the orders here on review are valid orders. (2) Petitioners' violations of the immigration laws create no extraordinary rights in them, directly or vicariously through their citizen children, to retain their illegally acquired residency status in this country while awaiting legalization of their entry and right to remain through the issuance of visas." 515 F.2d at 1224.

The plaintiffs rely on *Acosta v. Gaffney*, 413 F.Supp. 827 (D.N.J.1976), a recent decision based on facts almost identical to those at bar. There plaintiffs, Carlos and Beatriz Acosta, were citizens of Columbia (as are the Lopez' here), who entered the United States separately on non-immigrant visitor visas, overstayed their time period, were subsequently married in New Jersey, and nine months later gave birth to a baby daughter in that state. The authorities subsequently apprehended them and initiated deportation proceedings. After a denial of an application for stay of deportation, those plaintiffs filed suit in federal court, raising the same constitutional argument raised here, i. e., that the *"de facto* deportation of the citizen-child which would necessarily result upon the deportation of her parents constituted an unconstitutional deprivation of her rights and privileges as a native-born citizen of the United States."

The district court accepted this argument, holding that the de facto deportation of the citizen-child resulted in "the outright destruction of the central privilege of an American citizenship already vested: the right to live in the United States for as long as one sees fit," 413 F.Supp. at 832–833, and declared such action to be unconstitutional.

This Court would agree that if an act of the government did result in the "outright destruction" of an essential privilege of citizenship, that act would indeed be "repugnant to the Constitution." 413 F.Supp. at 832. However this Court does *not* agree that the decision of the *parents*, (who are

the only subjects of the deportation order) to take their infant child back with them to their native land, results in the "outright destruction" of any privileges of United States citizenship that that child has. The child does not lose his citizenship status upon his departure from this country. He is perfectly free to return to the United States whenever he has the desire and the means (either independently or through others) to do so. He faces no quotas or entry restrictions because he is not an alien but a native-born citizen of the United States.

Nor can this Court accept the conclusion in *Acosta, supra,* that his departure from the United States along with his parents, is the necessary result of the government's actions. There are several alternatives and in the end it is a choice made by the citizen-child's parents which controls and determines his fate. The court in *Acosta* summarily dismisses the alternative of the child remaining behind; yet it is an alternative to departure, and the choice is left to the parents. *Cf. Swartz v. Rogers, supra.* The government cannot and will not dictate one alternative over the other. Certainly the prospect of leaving an infant citizen-child alone in the United States is not a pleasant one, but the alien parents who deliberately overstayed their legal visitation period in the United States must bear the responsibility for creating such a choice.

The plaintiffs conceded at oral argument that these citizen-children's vested rights are not "destroyed" upon their departure from the United States; rather it is argued that if the citizen-children are compelled to leave the United States because of deportation orders directed against their parents, their privileges of citizenship will be "diluted" or "impaired." *Cf. Afroyim v. Rusk,* 387 U.S. 253, 262, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1966). This dilution occurs, plaintiffs contend, because these citizens would be effectively deprived of the right to grow up in the United States, to be educated here in the public schools and to speak its language and grow familiar with its customs and traditions. The lack of such a background would be an effective disincentive to any desire to return to the United States when the citizen-child matures, they contend.

The Court does not see such potential consequences as the type of "dilution" prohibited in *Afroyim, supra.* There, the Supreme Court was faced with the situation where a United States citizen could lose his citizenship entirely if he voted in an election in his native land. The speculative effects of departing the United States while young and returning to his parent's native land, in these cases, does not rise to the same constitutional significance as did the action in *Afroyim.*

The Court in *Acosta* correctly characterizes one important right of citizenship as "the right to live in the United States for as long as one sees fit." However the necessary implication of that statement is that the citizen is the *only* one who can assert this right. In these cases, as in *Acosta,* the parents seek to assert the citizen-child's right on its behalf. The privilege must be asserted on behalf of the citizen-child if it can now be asserted at all since, as the plaintiffs' conceded at oral argument, the parents have absolutely no rights or privileges which they may assert for themselves. In this matter the parents stand in no better a position than a guardian ad litem.

However, it is certainly open to question whether the parents here are in a position to state what those citizen-children's desires are or will be at any later time. The parents seek to make a choice on behalf of the citizen-child at a time when he is incapable of making such a choice himself. As a consequence they argue that his "desire" would be whatever is "in the best interest" and that his "best interest" is to remain as a resident of the United States. This Court, however, cannot accept "the best interests of the child" standard, such as that posed in custody cases, as applicable here. If it were to accept such a standard, an argument could be made in every one of these cases that from an objective socio-economic perspective the "best interests of the child" would be to remain in the United States rather than return to the parents'

350

native land. Such a determination would inevitably result in situations where "the best interests of the child" were in conflict with the desires of its parents to return to their native land as a family unit. Following such logic the government would have to forcibly retain custody of the child over the wishes of its parents—clearly a repugnant action. Moreover, it is difficult to extricate the "desires" attributable to the child from the expectations of the parents, who clearly wish to remain in this country and whose desires equally clearly have no place in this consideration.

For all of the reasons discussed above this Court holds that regardless of whether circumstances compel a citizen-child to accompany its alien parents, who are validly being deported from this country, none of that citizen-child's constitutional rights, privileges or immunities of citizenship are destroyed or impaired by so departing the United States, and the plaintiffs' motion for preliminary injunctions are hereby DENIED.

IT IS SO ORDERED.