**Suleeport MAMANEE, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 76–3012.

United States Court of Appeals, Ninth Circuit.

Dec. 29, 1977.

---

Bill W. Lew (argued), Los Angeles, Cal., for petitioner.

Dzintra I. Janavs, Asst. U. S. Atty. (argued), Los Angeles, Cal., for respondent.

Before TRASK and GOODWIN, Circuit Judges, and SOLOMON,* District Judge.

PER CURIAM:

Petitioner, a citizen of Thailand, applied for suspension of deportation. Both the Immigration Judge and the Board of Immigration Appeals denied her application. We affirm.

Petitioner contends that the Board erred in ruling that she is ineligible for discretionary suspensory relief by the Attorney General under Section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)(1). This section requires that to get suspensory relief one shall have been "physically present in the United States for a continuous period of not less than seven years" immediately preceding the date of the application. Petitioner also contends that the refusal to suspend her deportation will result in an unconstitutional "de facto deportation" of her child, who, by birth, is a United States citizen.

Petitioner was admitted into the United States in 1967 on a student nonimmigrant visa, valid until 1973. In 1969, while attending school here, she married a fellow

* Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

student. He too is a citizen of Thailand, here on a nonimmigrant visa. Sometime later, petitioner gave birth, in the United States, to a daughter, Ann Mamanee.

Twice during the period between petitioner's first entry and November 7, 1974, the date on which the Immigration and Naturalization Service issued its order to show cause, petitioner returned to Thailand. She took both trips after she ceased to be a student.

On the first trip, petitioner was in Thailand for five months to help her mother, who was ill. On the second trip, petitioner remained in Thailand for about nine months. On the second trip, she went with her husband to Thailand to be supported by her family while her husband recovered there from injuries suffered in a car accident in the United States. Petitioner's husband returned to the United States after several months of recuperation. Three months later when he had earned enough money, he brought petitioner and their daughter back to the United States. To return, petitioner again secured a nonimmigrant visa. She told the American consul in Bangkok that she intended to remain in the United States for only two years, but she did not tell him that she was married and had a child.

During the second stay in Thailand, it was discovered that the daughter suffers from a rare form of anemia known as Alpha Thalassemia or Hemoglobin H disease. Medical testimony indicated that the child could significantly benefit from the medical care available in the United States and that similar care may not be available in Thailand. There was also evidence that the daughter may need a splenectomy.

Both petitioner and her husband are subject to deportation.[1]

The Immigration Judge denied petitioner's application for suspension of deportation and the Board of Immigration Appeals affirmed the ruling of the Immigration Judge.

### I. *Eligibility for Discretionary Relief*

Section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)(1), makes an alien eligible for a discretionary suspension of deportation by the Attorney General if, in addition to other requirements, the alien has been present for a "continuous" period of not less than seven years immediately preceding the application for relief. This statute is designed to alleviate, in deserving cases, the hardship that might result from deporting a noncitizen who has established and maintained a home in the United States for seven or more years. *Heitland v. Immigration and Naturalization Service*, 551 F.2d 495, 501 (2d Cir. 1977). The requirement of continuous residence has not been rigidly construed. To determine whether the requirement of continuous residence has been met, the court must decide whether there was a meaningful interruption of the alien's residence in the United States. *Heitland v. Immigration and Naturalization Service, supra; Wadman v. Immigration and Naturalization Service*, 329 F.2d 812, 816 (9th Cir. 1964). One factor to be considered is the length of absence from the United States. *Heitland v. Immigration and Naturalization Service, supra* at 500–501. Here, this factor is decisive. The second departure, if not the first, was a meaningful interruption of petitioner's residence. The entire family left the United States and intended to remain abroad for an indefinite time—at least until the petitioner's husband recovered from his injury.

In our view, there was substantial evidence to support the Board's finding that petitioner meaningfully interrupted her stay in the United States. We affirm the Board's ruling on this issue.

### II. *De Facto Deportation*

The legal argument for the claim of de facto deportation was summarized in

---

1. In November 1976, petitioner's husband filed an application for suspension of deportation. It was not granted.

*Lopez v. Franklin*, 427 F.Supp. 345, 347 (E.D.Mich.1977). The argument is as follows:

(a) a child born in the United States is a United States citizen;

(b) a United States citizen cannot be deported;

(c) the deportation of both alien parents of a citizen child in effect deports the child;

(d) the deportation of the parents therefore constitutes an unconstitutional deportation of the child.

The *Lopez* court rejected this reasoning and pointed out that "deportation" is a term of art and is not synonymous with mere departure from the United States.

Recently, this Court in *Lee v. Immigration and Naturalization Service*, 550 F.2d 554 (9th Cir. 1977), held that when alien parents are illegally within the United States, they cannot use the citizenship of their child to prevent their own deportation. The Court commented on the "relative ease with which aliens can enter this country as students or visitors and then delay their departure long enough to produce citizen children . . . ." 550 F.2d at 556.

In *Application of Amoury*, 307 F.Supp. 213, 216 (S.D.N.Y.1969), the Court, in rejecting a claim of de facto deportation, noted:

"It is all too true that ofttimes individuals, entirely innocent of wrongful conduct, suffer equally with those who commit the wrongful act which brings penalties in its wake. But this does not mean that a constitutional violation has been visited upon the innocent person. It is not required that the procedural due process due an accused must also be accorded to those who may be affected by the final result of proceedings against the accused.".

We reject petitioner's contention that her deportation will result in an unconstitutional de facto deportation of her child.

AFFIRMED.