Carlos ACOSTA, Beatriz Acosta, and
Lina Acosta

v.

John J. GAFFNEY, Acting District Director, Immigration and Naturalization Service, Newark, New Jersey, Appellant.

No. 76–2094.

United States Court of Appeals,
Third Circuit.

Argued May 5, 1977.

Decided July 6, 1977.

**1154**

Carolyn E. Arch, Asst. U. S. Atty., Newark, N.J., for appellant.

Linda Atlas, Brooklyn, N.Y., for appellees.

Regina C. Little, Legal Services of New Jersey, Inc., New Brunswick, N.J., William E. McAlvanah, Hudson County Legal Services, Jersey City, N.J., for amicus curiae.

Before GIBBONS, MARIS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

MARIS, Circuit Judge.

The United States Immigration and Naturalization Service (herein "INS") acting through its district director, the nominal defendant, appeals from the district court's May 12, 1976 order reversing the INS' orders of deportation and denial of stay of deportation of the alien plaintiffs. The facts of the case are not in dispute and will be briefly stated.

Carlos Acosta, a native and citizen of the Republic of Colombia, was admitted to the United States October 21, 1972 as a nonimmigrant visitor authorized to remain in the United States until October 31, 1972. Maria Dolores Beatriz Velaquez, now Beatriz Acosta, also a Colombian, was admitted on a nonimmigrant basis November 23, 1974 and was authorized to remain until December 5, 1974. The two aliens overstayed the period of their authorized visits and were married in Jackson, New Jersey on December 25, 1974.

The INS instituted deportation proceedings against the Acostas and scheduled a hearing to be held in Newark, New Jersey on September 9, 1975. Upon receipt of a physician's statement that Beatriz, who was then pregnant, was unable to travel, the deportation hearing was rescheduled to take place shortly after the birth, on September 23rd, of the Acostas' daughter, Lina.[1] The Acostas were found to be deportable by the immigration judge on the basis of their own admissions. They requested and were granted voluntary departure on or before February 1, 1976. The privilege of voluntary departure was to be withdrawn and an order of deportation to Colombia was to become effective immediately in the event the aliens failed to depart voluntarily within the time allowed. The Acostas waived their right to take an appeal from the decision of the immigration judge to the Board of Immigration Appeals.

1. After the birth of their daughter, the Acostas applied to the American consulate in Bogota, Colombia for an immigrant visa priority date. They received a priority date of December 3, 1975.

On February 20, 1976 the Acostas applied to the INS for a stay of deportation asserting that their deportation would cause hardship to the Acosta family in the uprooting of the five-month-old child, economic hardship to the Acostas and Carlos' nephew and niece, United States citizens to whose support Carlos contributed, in the loss of the $175 per week shipping clerk job held by Carlos in this country without any prospect of immediate gainful employment or other means of support in Colombia and, finally, the Acostas asserted that their deportation would unconstitutionally deprive their daughter of the equal protection of the laws which was her right as a United States citizen.

By letter dated April 6th, the INS denied the Acostas' request for stay of deportation on the ground that the facts set forth in the request did not constitute extreme hardship and offered to consider cancelling the outstanding warrant of deportation against them and reinstituting the privilege of voluntary departure if the Acostas would report to the Newark, New Jersey office with tickets confirmed for departure by April 16, 1976.

The Acostas, naming themselves and their infant daughter as plaintiffs, filed in the district court on April 21 an action for a declaratory judgment and review of the denial of stay of deportation under the Declaratory Judgment and Administrative Procedure Acts, 28 U.S.C. § 2201 and 5 U.S.C. § 702. In addition, the Acostas sought restraint of the INS from enforcing the orders of deportation pending the district court's determination of the case and any other appropriate relief. The basis for relief set forth in the complaint is that the deportation order and denial of stay will result in the possible enforced break up of the Acosta family unit, economic hardship to the family and an unconstitutional discrimination against Lina by reason of her alien parentage in derogation of her right as a United States citizen to equal protection of the laws.

The district court determined that it had jurisdiction to review the order of the INS denying stay of deportation under section 10 of the Administrative Procedure Act, 5 U.S.C. § 702, that its jurisdiction extended to the infant plaintiff as a person "adversely affected or aggrieved" by the INS orders, and that, its jurisdiction being established under the Administrative Procedure Act, the court was empowered to grant declaratory relief. The court issued a temporary restraining order against the deportation of the Acostas. It rejected Lina's Fifth Amendment equal protection claim but ruled that the orders compelling the deportation of the parents of the five-month-old infant constituted a compelled *de facto* deportation of the infant citizen in violation of her constitutional right to live and remain in the United States. 413 F.Supp. 827, 831–833 (D.N.J.1976). The appeal now before us followed.

■ We are confronted at the outset with the question of the jurisdiction of the district court to entertain the action. It is clear that the court did have jurisdiction to review at the instance of Carlos and Beatriz the refusal of the INS to stay its order of deportation against them. *Cheng Fan Kwok v. Immigration Serv.*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968). That jurisdiction is conferred by section 279 of the Immigration and Nationality Act, 8 U.S.C.A. § 1329, which confers upon the district courts jurisdiction of all causes arising under any of the provisions of subchapter II [2] of the Act. *See* 2 C. Gordon & H. N. Rosenfield, *Immigration Law and Procedure* 8–40.1 n.1 (1976). Section 279 was subsequently modified by the addition of section 106 to the Act, 8 U.S.C.A. § 1105a, which conferred upon the courts of appeals exclusive jurisdiction to review final orders of deportation made by the INS against aliens within the United States. While section 106 thus withdrew from the district courts their jurisdiction under section 279 to

---

**2.** Subchapter II includes the provisions of the Act relating to immigration and the deportation of aliens.

review the validity of deportation orders, it did not affect their jurisdiction under that section to review the denial by the INS of the stay of a deportation order which has been sought on grounds other than the invalidity of the order.

◼ The question remains whether section 279 conferred jurisdiction on the district courts of the claim for relief made on behalf of the infant, Lina Acosta. The language of section 279 is broad. Jurisdiction is conferred upon the district courts "of all causes, civil and criminal, arising under any of the provisions of this subchapter . . ." 8 U.S.C.A. § 1329. The operative language is substantially the same as that of 28 U.S.C. § 1331 which confers jurisdiction upon the district courts "of all civil actions wherein the matter in controversy . . . arises under the Constitution, laws, or treaties of the United States . . ." It is true that section 1331 also required, at the time this suit was brought, a showing of a jurisdictional amount in controversy in excess of $10,000 in an action such as this against a government officer and no such jurisdictional amount has been claimed or shown in this case.[3] Accordingly, section 1331, itself, does not support jurisdiction here. *See McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 182, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Smith v. Spina,* 477 F.2d 1140, 1143–1144 (3d Cir. 1973). But in view of the similarity of the language used in the two sections we think that section 279 should be given an interpretation, similar to that which is accorded section 1331, which is sufficiently broad to provide subject-matter jurisdiction here. An action "arises under the . . . laws . . . of the United States," for purposes of jurisdiction under section 1331, if the complaint seeks a remedy provided by the statute in question, if the disposition of the case requires a construction of the statute, or if a policy of the statute requires the application of federal legal principles to resolve the controversy. *See Lindy v. Lynn,*

501 F.2d 1367, 1369 (3d Cir. 1974). Applying these guidelines to the determination of whether the district court had jurisdiction under section 279 to hear Lina's claim for relief, we conclude that the section provides jurisdiction both in itself since it authorizes an action for the review of denial of a stay of deportation and in that the disposition of the action necessarily involves the application of federal legal principles in the field of immigration, a field exclusively committed to the federal government. Whether Lina has standing to invoke such an action remains to be considered.

◼ Lina was, of course, not a party to the deportation proceedings in the INS nor was intervention sought on her behalf in those proceedings. We think that nonetheless she has standing to join in the present action as a plaintiff. Sections 702–706 of title 5 U.S.C., formerly section 10 of the Administrative Procedure Act, confer upon a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of any relevant statute" the right to judicial review in the special statutory review proceeding provided by statute where, as here, such a proceeding is authorized by the relevant statute, such proceeding to be conducted in the court designated by the statute, here the district court as authorized by section 279. Lina has alleged that as a United States citizen she has been subjected to a legal wrong by the order denying a stay of deportation of her parents in that the order will violate her constitutional rights to the equal protection of the laws and to reside in the United States. Accordingly, we conclude that 5 U.S.C. §§ 702–706, although not themselves constituting an independent grant of subject-matter jurisdiction to the district courts, *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Local 542, International Union of Operating Engineers v. NLRB,* 328 F.2d 850, 854 (3d Cir.), *cert. denied,* 379 U.S. 826, 85 S.Ct. 52, 13 L.Ed.2d 35 (1964), do serve to

---

**3.** Section 1331(a) was amended October 21, 1976, 90 Stat. 2721, to eliminate the amount-in-controversy prerequisite to maintenance of an

action against the United States, any agency of the United States or any officer or employee of the United States in his official capacity.

confer standing upon Lina to join as a party plaintiff in this suit. *Compare American Power Co. v. SEC,* 325 U.S. 385, 389–390, 65 S.Ct. 1254, 89 L.Ed. 1683 (1945).

■ Having determined that the district court had jurisdiction of the plaintiffs' action under section 279 of the Immigration and Nationality Act, we pass to the consideration of the merits of the controversy. The claim of the parents, Carlos and Beatriz, requires little discussion. Essentially they assert that the refusal of the stay of deportation order was an abuse of discretion by the INS in view of the economic hardship to which they will be subjected if Carlos is compelled to return to Colombia and cannot find work there as is likely in view of the economic conditions in that country. However, these facts, even if proved, are not sufficient to establish such extreme hardship as would warrant the stay of a valid order of deportation. *See Yeung Ying Cheung v. Immigration & Naturalization Serv.,* 422 F.2d 43, 46–47 (3d Cir. 1970); *Pelaez v. Immigration and Naturalization Service,* 513 F.2d 303 (5th Cir.), *cert. denied,* 423 U.S. 892, 96 S.Ct. 190, 36 L.Ed.2d 124 (1975). Indeed to hold otherwise would tend to open the doors to permanent residence in the United States to any citizen of an underdeveloped country who could get here in one way or another and who desired to remain. Nor does the district director's failure to act upon his authority, set forth in an INS operating instructions manual, to grant a stay of deportation upon his own initiative constitute an abuse of discretion here even though there may exist appealing humanitarian factors which might support such action. *See Roumeliotis v. INS,* 354 F.2d 236 (7th Cir.), *cert. denied,* 384 U.S. 907, 86 S.Ct. 1343, 16 L.Ed.2d 360 (1966); *Polites v. Sahli,* 302 F.2d 449, 451 (6th Cir.), *cert. denied,* 371 U.S. 916, 83 S.Ct. 259, 9 L.Ed.2d 175 (1962).

We turn then to consider Lina's claim for relief. Basically it is that she is entitled to a stay of her parents' deportation order because that order, although admittedly valid as against them, will operate, if executed, to deny to her the right which she has as an American citizen to continue to reside in the United States. On her behalf it is argued that she will be deprived of this constitutional right of a citizen because as an infant she must remain with her parents and go with them wherever they go. In the district court Lina also asserted that her constitutional right to equal protection of the laws had been violated by the INS orders. This claim was rejected by the district court and it has not been pressed on appeal. We, accordingly, do not consider it.

■ The constitutional right upon which Lina relies is somewhat broader than she describes it. It is the fundamental right of an American citizen to reside wherever he wishes, whether in the United States or abroad, and to engage in the consequent travel. *See Schneider v. Rusk,* 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964); *Kent v. Dulles,* 357 U.S. 116, 125, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958). It is the right to exercise a choice of residence, not an obligation to remain in one's native country whether one so desires or not, as is required in some totalitarian countries. In the case of an infant below the age of discretion the right is purely theoretical, however, since the infant is incapable of exercising it. As the Court of Appeals for the Fifth Circuit pointed out in *Perdido v. Immigration and Naturalization Service,* 420 F.2d 1179, 1181 (5th Cir. 1969), ". . . a minor child who is fortuitously born here due to his parents' decision to reside in this country, has not exercised a deliberate decision to make this country his home, and Congress did not give such a child the ability to confer immigration benefits on his parents. . . . It gave this privilege to those of our citizens who had themselves chosen to make this country their home and did not give the privilege to those minor children whose noncitizen parents make the real choice of family residence."[4]

4. In the *Perdido* case section 201(b) of the Immigration and Nationality Act, 8 U.S.C.A. § 1151(b) was involved. It provides that United States citizens over 21 years of age can procure the admission of their alien parents as non-quota immigrants. The *Perdidos* sought to

Obviously, as pointed out in the *Perdido* case, an infant of Lina's tender years cannot make a conscious choice of residence, whether in the United States or elsewhere, and merely desires, if she can be thought to have any choice, to be with her parents. It is true, of course, that Carlos and Beatriz could, as Lina's parents and natural guardians, decide that it would be best for her to remain in the United States with foster parents, if such arrangements could be made. But this would be their decision involving the custody and care of their child, taken in their capacity as her parents, not an election by Lina herself to remain in the United States.

■ The right of an American citizen to fix and change his residence is a continuing one which he enjoys throughout his life. Thus while today Lina Acosta, as an infant twenty-two months of age, doubtless desires merely to be where she can enjoy the care and affection of her parents, whether in the United States or Colombia, she will as she grows older and reaches years of discretion be entitled to decide for herself where she wants to live and as an American citizen she may then, if she so chooses, return to the United States to live. Thus, her return to Colombia with her parents, if they decide to take her with them as doubtless they will, will merely postpone, but not bar, her residence in the United States if she should ultimately choose to live here.

■ We conclude that the district court was in error in holding that the INS erred in denying a stay of the deportation order in view of its effect upon Lina Acosta. In so holding we are in accord with the decided cases in other courts of appeals. *Mendez v. Major,* 340 F.2d 128, 131 (8th Cir. 1965); *Enciso-Cardozo v. Immigration & Naturali-*

zation Service, 504 F.2d 1252, 1253 (2d Cir. 1974); *Cervantes v. Immigration and Naturalization Service,* 510 F.2d 89 (10th Cir. 1975); *Gonzalez-Cuevas v. Immigration and Naturalization Service,* 515 F.2d 1222 (5th Cir. 1975). No contrary cases have been cited to us and we have found none.[5] Indeed a contrary holding would open a loophole in the immigration laws for the benefit of those deportable aliens who have had a child born while they were here.

■ We need only add that we think the district court also erred in holding the deportation order itself invalid. For clearly the order was valid insofar as it determined the status of Carlos and Beatriz Acosta. And equally obviously it will be valid as to them and have no effect upon Lina after the latter reaches years of discretion and can exercise the right of choice of residence. Surely, therefore, regardless of whether or not it should be stayed during the period during which Lina's parents are responsible for her custody and care, it cannot be regarded as invalid during that time. Moreover, it may well be that in any event under section 106 of the Act the district court lacked jurisdiction to pass on the validity of the deportation order even thus tangentially. This is a question we need not here decide, however.

The order of the district court will be reversed.

secure this status for themselves on the basis of their two minor children who were United States citizens, claiming that their children were denied the equal protection of the laws. The court denied the claim, holding that the statutory distinction between adult children who had made a conscious choice of residence in the United States and minor children who had not was reasonable and contained no constitutional infirmity.

**5.** The Supreme Court has not spoken directly on the issue, although in *Hintopoulos v. Shaughnessy,* 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957), the alien parents urged that their deportation would result in a "serious economic detriment" to their United States citizen child. The Court affirmed the judgment denying suspension of deportation, finding no abuse of discretion.