Yolanda **MARTINEZ de MENDOZA** and **Yolanda Carmen Mendoza**, Petitioners,

v.

**IMMIGRATION AND NATURALIZATION SERVICE**, Respondent.

**No. 76–2530.**

United States Court of Appeals, Third Circuit.

Argued Oct. 17, 1977.

Decided Dec. 1, 1977.

Edward Colligan, Wadley & Colligan, Newark, N. J., H. Evans Hemsath, Jr., Westfield, N. J., for petitioners.

Philip Wilens, Chief, Government Regulations and Labor Section, Crim. Div., James P. Morris, Rex Young, Chester J. Halicki, Dept. of Justice, Washington, D. C., for respondent.

Before ADAMS and GARTH, Circuit Judges, and LAYTON, District Judge.*

## OPINION OF THE COURT

### PER CURIAM:

In this case, a Colombian citizen, who entered the United States illegally, and her American daughter ask us to review an order entered by the Immigration and Naturalization Service (INS) directing that the mother be deported. They base their challenge on the ground that deportation would expose both mother and daughter to mortal peril. We remand the case for reconsideration by the INS in light of newly available evidence indicating that the mother and daughter may be endangered if the deportation order is carried out.

Yolanda Martinez de Mendoza, the alien petitioner in this case, first entered the United States in July, 1969, when she was admitted on a tourist visa. After overstaying that visa, she was required to depart in April, 1970. In June, 1970, Ms. Martinez de Mendoza re-entered the United States using a new Colombian passport and a new visa. She returned to Colombia in February, 1974 to visit her family. Petitioner's most recent entry into the United States, in March of 1974, was secured by use of an illegally obtained American passport. She was thus admitted without inspection, in violation of 8 U.S.C. § 1251(a)(2) (1970), making her subject to deportation.

■ Yolanda Carmen Mendoza, also a petitioner in this action,[1] is the seven-year-old daughter of Ms. Martinez de Mendoza and Fernando Mendoza. Yolanda Carmen was born during her mother's second sojourn in the United States, and is therefore a United States citizen.

On November 28, 1975, a hearing was held before an immigration judge pursuant to an effort by the INS to deport Ms. Martinez de Mendoza. Ms. Martinez de Mendoza did not contest the assertion that she had entered the country illegally and that she was therefore subject to deportation. Rather, she requested the privilege of departing voluntarily in order to increase her chances of readmission. Her request was denied in an oral opinion, and a deportation order was entered.

The Board of Immigration Appeals dismissed the mother's appeal on July 21, 1976 with a very brief per curiam opinion that summarily affirmed the order below. In its opinion, the Appeals Board made no mention of any potential danger to the mother or to her daughter or of the fact that Ms. Martinez de Mendoza had cooperated with

---

* United States District Judge for the District of Delaware, sitting by designation.

1. This Court recently held that the citizen child of an alien subject to deportation has standing as a "person aggrieved" by the deportation order within the meaning of 5 U.S.C. § 702–706. *Acosta v. Gaffney*, 558 F.2d 1153 (No. 76–2094 3d Cir. 1977). *See Application of Amoury*, 307 F.Supp. 213, 215 (S.D.N.Y.1969). The *Acosta* holding logically implies that such a child is also a "person aggrieved" for purposes of 28 U.S.C. § 2344, which governs the review of a final order of deportation.

INS officials in an investigation of the source of her illegal passport.[2]

Before deportation, Ms. Martinez de Mendoza filed a petition with the INS District Director, dated November 4, 1976, requesting a stay of deportation. The petition was accompanied by affidavits stating that Fernando Mendoza, the husband of the petitioner-mother and the father of petitioner-daughter had been returned to Colombia in August of 1976.[3] This fact was significant, the affidavits alleged, because Mr. Mendoza had on several previous occasions assaulted Ms. Martinez de Mendoza, twice causing injuries that were sufficiently serious to result in hospitalization and, prior to his return to Colombia, he had been serving a jail term for shooting two men who had sought to prevent him from attacking the mother and daughter. It is asserted in the affidavits that Fernando Mendoza had threatened the lives of his wife and daughter, and that if Ms. Martinez de Mendoza were deported to Colombia, she and her daughter, who would perforce accompany her, would be placed in mortal danger from Mr. Mendoza's assaults.

Without mentioning the allegations of danger to either Ms. Martinez de Mendoza or her American citizen daughter, the District Director denied, by a letter dated November 6, 1976, the petition for stay.[4] On November 9, 1976 the present petition was filed challenging the order of deportation.

Before this Court, therefore, is an administrative record containing uncontradicted affidavits alleging that deportation of Ms. Martinez de Mendoza would endanger both her safety and the safety of her American daughter. Yet the record lacks any rea-soned evaluation by the INS regarding this alleged threat.

At oral argument, counsel for the government urged that this Court has no jurisdiction to grant relief on the basis of the alleged danger. As authority for that proposition, the government pointed to *Cheng Fan Kwok v. INS*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968). In that case, Cheng Fan Kwok, after having been ordered to depart the U.S. voluntarily, was denied a stay of deportation by the District Director of INS. Cheng Fan Kwok attempted to challenge the denial of the stay in the Court of Appeals in a proceeding brought under 8 U.S.C. § 1105a. The Supreme Court held that the Court of Appeals had no jurisdiction over the claim that the INS had erred in denying the stay, since it involved neither a challenge to a "final order of deportation" nor an order "entered in the course of administrative proceedings conducted under § 242(b) [of the Immigration and Naturalization Act]." 392 U.S. at 212, 88 S.Ct. at 1974.

In our judgment, *Cheng Fan Kwok* does not bar relief in this case. Unlike the situation before the Supreme Court, there is no question but that this Court has jurisdiction over the case before us. Jurisdiction over the challenge by the petitioner to the order deporting her is expressly vested in this Court by 8 U.S.C. § 1105a (1970) as an appeal from a "final order of deportation." The Court's jurisdiction over Ms. Martinez de Mendoza's appeal from the order of deportation may well vest in us ancillary or pendent jurisdiction to review the refusal of the District Director to grant a stay.[5] And

---

**2.** While evidence of Ms. Martinez de Mendoza's cooperation had been adduced before the hearing examiner, the circumstances giving rise to the allegations of danger did not eventuate until after the Appeals Board decision.

**3.** In addition to the affidavit of Ms. Martinez de Mendoza, there were two affidavits from persons who stated they were familiar with Fernando Mendoza and the appellants. One affiant stated that he had known Mendoza during the affiant's entire life.

**4.** The petition also invoked *Acosta v. Gaffney*, 413 F.Supp. at 827 (D.N.J.1976), which held that the deportation of an infant citizen's parents was an unconstitutional *de facto* deportation of the citizen. Inasmuch as *Acosta* was reversed by this Court, *Acosta v. Gaffney*, 558 F.2d 1153 (No. 76–2094 3d Cir. June 6, 1977), we need not dwell on the District Director's enigmatic assertion that it "ha[d] no bearing on" the Mendoza case.

**5.** In *Cheng Fan Kwok*, the Supreme Court explicitly left open the possibility that jurisdiction over an appeal from a deportation order would

if our review reached the District Director's order, we would entertain grave doubts about the failure of the District Director to articulate reasons for the summary dismissal of a petition for a stay founded on an alleged threat to the life of an American citizen.[6]

■ We need not reach these questions, however, since § 1105a, itself, gives us power to dispose of the case before us by treating this appeal as an application under 28 U.S.C. § 2347 for leave to adduce additional evidence.[7] § 2347(c) provides:

If a party to a proceeding to review applies to the court of appeals in which the proceeding is pending for leave to adduce

additional evidence, and shows to the satisfaction of the court that—

(1) the additional evidence is material; and

(2) there were reasonable grounds for failure to adduce the evidence before the agency;

the court may order the additional evidence and any counterevidence the opposite party desires to offer to be taken by the agency.

The evidence that deportation will put both mother and daughter in danger of assault and possible homicide is "material" to the decision to deport Ms. Martinez de Mendoza.[8] Since the "evidence" proffered here regarding the release of Mr. Mendoza and his return to Colombia did not become

---

vest a court of appeals with pendent jurisdiction to review a district director's denial of a stay. 392 U.S. at 216 n. 16, 88 S.Ct. 1970. *See Foti v. Immigration and Naturalization Services*, 375 U.S. 217, 227 n. 14, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963); *Lad v. Immigration and Naturalization Service*, 539 F.2d 808, 809–810 n. 4 (1st Cir. 1976).

With jurisdiction over the case provided by 8 U.S.C. § 1105a, a persuasive argument can be made that this Court also has jurisdiction to adjudicate the issue whether the District Director's action is an abuse of discretion. The Director's action involves the same nucleus of operative facts, and where ancillary jurisdiction over a federal cause of action is involved, the policies restraining the exercise of pendent jurisdiction over state claims are largely absent. *See Hagans v. Lavine*, 415 U.S. 428, 545–550, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (colorable constitutional claim gives district court pendent jurisdiction over statutory claim); *Rosado v. Wyman*, 397 U.S. 397, 402–404, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) (constitutional claim gives three-judge court jurisdiction over statutory claim); *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959) (Jones Act claim gives pendent jurisdiction over general federal maritime claim).

6. After expressing the view that *Acosta, supra,* was distinguishable, the District Director's letter of denial simply called upon Ms. Martinez de Mendoza to surrender. No mention was made of the alleged physical threats. It is doubtful whether such a procedure would permit us to uphold the order.

*See Flores v. Immigration and Naturalization Service*, 524 F.2d 627 (9th Cir. 1975) (affirming grant of habeas corpus where reasons for denial of stay by District Director were not set forth and the district court could therefore not determine whether abuse of discretion had oc-

curred); 2 Gordon & Rosenfeld, *Immigration Law and Procedure* 8–100, 77–78 (1976 Cum. Supp.) ("[I]t is necessary that the administrative determination set forth the basis for the exercise of discretion so that the reviewing court may ascertain that there has been no abuse of discretion"); *cf. Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (review for abuse of discretion requires that the agency which entered the order scrutinized set forth the reasons providing the predicate for the action taken); *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) (same).

7. § 1105a provides that review of a final order of deportation is to be governed by "sections 1031–1042 of Title 5." 5 U.S.C. § 1037 was recodified as 28 U.S.C. § 2347 (1970) in 1966.

8. At oral argument, counsel for the INS appeared to concede that if the Colombian government is unable to control Mr. Mendoza, the mother may be eligible for relief under 8 U.S.C. § 1253(h). The allegations in the affidavits before us that Mr. Mendoza has killed persons in Colombia previously at least raises a colorable question of whether Mr. Mendoza will be controlled. In addition, since Ms. Martinez de Mendoza has been present in the U.S. for all but one month since June 1970, she may also be eligible for relief under 8 U.S.C. § 1254(a)(1). We express no opinion, however, on whether she meets the requirements of "good moral character" and "7 years continuous physical presence" necessary to qualify under § 1254(a)(1). Finally, if the allegation that *de facto* deportation of Yolanda Carmen Mendoza would expose her to physical danger are correct, they may well be sufficient to raise questions of the constitutionality of such deportation not answered by our decision in *Acosta, supra.*

available until after the Board of Appeals rendered its decision, reasonable grounds exist for not bringing that information to the attention of the Board of Immigration Appeals.[9]

We therefore conclude that the case should be remanded to the INS to receive evidence concerning the threats to the life and safety of Ms. Martinez de Mendoza and her daughter, as well as any other evidence which the INS desires to offer pursuant to 28 U.S.C. § 2347. The order of deportation will be stayed pending receipt by this Court of the Board's findings, conclusions, and any modifications it may make.

---

**9.** *See Coriolan v. Immigration and Naturalization Service*, 559 F.2d 993, 1003–1004 (5th Cir. 1977) (remanding under § 2347(c) for INS evaluation of new evidence of oppressive nature of regime of the country to which petitioners were to be deported) *distinguishing Paul v. Immigration and Naturalization*, 521 F.2d 194, 201 (5th Cir. 1975) (refusing to remand on the ground that petitioners could have moved to reopen the proceedings before the INS).

As noted above, the attempt to elicit a ruling from the INS by means of a petition for a stay was frustrated by the terse character of the INS' response.

Under the Immigration Service's Regulation, an affected party may request that the Board of Immigration Appeals reopen or reconsider any case in which a decision has been rendered by the Board when material evidence was not available and could not have been discovered or presented at the former hearing. 8 C.F.R. § 3.2. Although we agree with the reasoning in *Coriolan, supra*, that the availability of this procedure before the Board of Immigration Appeals does not bar our power to remand under 28 U.S.C. § 2347(c), nevertheless we caution that in normal circumstances a party asserting new and material evidence should, in the first instance, resort to the remedies available under 8 C.F.R. § 3.2, rather than invoking our power under § 2347(c).