45 F.3d 435
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Ramiro CORONA-ROCHA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 93-70576.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 16, 1994.*
Decided Dec. 28, 1994.
 
 Before: WALLACE, Chief Judge, PREGERSON, and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Ramiro Corona-Rocha appeals the Board of Immigration Appeals's ("BIA") decision finding him deportable as charged and denying his application for a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act of 1991, 8 U.S.C. Sec. 1182(c) (West Supp.1994), ("Act" or "INA"). We affirm.
 
 BACKGROUND
 
 3
 Ramiro Corona-Rocha is a 42 year old legal permanent resident of the United States and a native and citizen of Mexico. He came to the United States in 1972 and was legally admitted in 1977. Corona-Rocha has been married twice and has four children, all of whom are United States citizens. He has worked varnishing furniture at J. Paranzo & Sons for about fourteen years.
 
 
 4
 On November 30, 1987, Corona-Rocha was convicted in Arizona state court of possession of marijuana for sale. Under the Act, permanent resident aliens who are convicted of all but the most minor of crimes involving controlled substances are deportable. INA Sec. 241(a)(2)(B)(i), 8 U.S.C. Sec. 1251(a)(2)(B) (West Supp.1994).[1] On December 28, 1987, the Immigration and Naturalization Service (INS) issued an order to show cause against petitioner based on his conviction, charging him with deportability. On September 20, 1988 the immigration judge (IJ) who conducted the deportation hearing on the merits found Corona-Rocha to be deportable. Corona-Rocha applied for a waiver application under section 212(c) of the Act, 8 U.S.C. Sec. 1182(c) (West Supp.1994) which allows the Attorney General (or her representative) to exercise discretion in a deportation proceeding no matter whether the individual in question is actually deportable. The IJ denied the application, holding that Corona-Rocha had "not shown outstanding or unusual countervailing equities which justify the grant of a waiver under section 212(c) of the Act." (E.R. 5 at 9). Corona-Rocha appealed to the BIA which affirmed the immigration judge's decision in a per curiam opinion.
 
 ANALYSIS
 
 5
 We review the BIA's decision regarding the waiver of deportation for abuse of discretion. Casem v. INS, 8 F.3d 700, 702 (9th Cir.1993). That standard requires the BIA to take into account all relevant factors without acting in an arbitrary, illegal or irrational fashion. Id. We examine each of Corona-Rocha's claims in turn.
 
 
 6
 a. Inadequate Review of Evidence.
 
 
 7
 Corona-Rocha contends that the IJ placed too little emphasis on the humanitarian and hardship factors in his case and did not consider Corona-Rocha's rehabilitation at all. We disagree. We find that the immigration judge did address the important factors, on both sides of the case, that existed at the time of the deportation hearing.
 
 
 8
 Though the IJ devoted more of his opinion to describing the testimony of the arresting officer and the drug incident, he did look at many other factors carefully as well. For example, contrary to Corona-Rocha's belief, the IJ clearly considered Corona-Rocha's relationship to his children in the analysis, though he did not use the term "emotional hardship." (E.R. 5 at 9).
 
 
 9
 Regarding Corona-Rocha's rehabilitation claim, although the judge did not specifically mention Corona-Rocha's "rehabilitation" in his analysis, he did summarize the testimony of Corona-Rocha's probation officer who mentioned the work/furlough program and that Corona-Rocha had no other convictions. No Ninth Circuit case suggests that the IJ's treatment was not adequate.
 
 
 10
 b. The BIA's Summary Affirmance.
 
 
 11
 Although the Board only issued a summary statement, Corona-Rocha does not convince us that it was insufficient. The Ninth Circuit cases that he relies on requiring the BIA to consider all relevant factors are distinguishable because they involve the BIA's decisions regarding motions to reopen, which are not on appeal. See Mattis v. INS, 774 F.2d 965, 969 (9th Cir.1985); Batoon v. INS, 707 F.2d 399, 401 (9th Cir.1983). In those cases, the BIA has no lower court opinion on which it can rely.
 
 
 12
 In fact, as the INS points out, we have suggested in past cases that the BIA need not spell out all relevant factors when it relies on an IJ's decision. See Hyun Joon Chung v. INS, 720 F.2d 1471, 1475 (9th Cir.1984), cert. denied, 467 U.S. 1216 (1984); Ramirez-Gonzalez v. INS, 695 F.2d 1208, 1213 (9th Cir.1983). Of course, because we only review to determine whether the BIA has considered all the relevant factors, our task becomes more difficult when the BIA makes a summary affirmance. However, in this case, we find no evidence that the BIA abused its discretion.
 
 
 13
 c. New Evidence.
 
 
 14
 The circumstances of Corona-Rocha's life have changed to such an extent that a reconsideration of his case is warranted. The immigration judge's decision, which the BIA affirmed, considered several factors in deciding not to grant Corona-Rocha's request for a waiver. In favor of the waiver, the immigration judge noted that Corona-Rocha had been a lawful permanent resident for eleven years and had lived in the United States for about sixteen; that he had been employed with the same employer for nine years and had become an "integral" part of the business; that he was a model probationer; that he had no other convictions on his record; that his three children are U.S. citizens, and that he and his daughter Yolanda have a close relationship.
 
 
 15
 In support of denying the waiver, the court found that Corona-Rocha, despite his emphatic denials, was an active participant in the marijuana incident; that his children did not live with him; that they did not depend on him monetarily; that he had no property interests in the United States; and that his relatives, other than his children, lived in Mexico.
 
 
 16
 In the six years that have passed since the immigration judge issued his decision,[2] Corona-Rocha asserts that many circumstances in his life have changed, and that he is now an even better candidate for a waiver. Indeed, if Corona-Rocha's assertions are correct, the positive factors that the judge referred to are now stronger. Corona-Rocha asserts that he has now lived in the United States for over twenty-one years; he is still working at J. Paranzo & Sons, bringing his tenure there to fourteen years; he still has no other convictions on his record; he now has four children who are U.S. citizens, and he is close to all of them, including Yolanda.
 
 
 17
 Moreover, according to Corona-Rocha, many of the negative factors in his case are no longer problematic: Corona-Rocha claims that now he does live with and solely support one of his children as well as his fiancee (who is a legal permanent resident); he now provides $250 in child support each month to his other children; his parents now reside in the United States; and he has gained a property interest in the United States, having bought a house where his mother now lives.
 
 
 18
 We believe that the events that have occurred in Corona-Rocha's life over the last six years may well tip the balance of the equities in his favor. However, the law of this Circuit does not allow us to remand to the BIA under 28 U.S.C. Sec. 2347(c) (1994) and require the Board to reopen the hearings and consider the new evidence.[3] Ramirez-Gonzalez, 695 F.2d at 1213. The most we can do is suggest that Corona-Rocha file a motion to reopen his case before the BIA along with all the necessary affidavits and other proof of his changed circumstances. Id. at 1213-14.
 
 
 19
 The decision of the BIA is affirmed, and we stay the order of deportation for ninety (90) days to allow Corona-Rocha to file a motion to reopen his case before the BIA in light of his changed circumstances.
 
 WALLACE, Chief Judge, concurring:
 
 20
 I concur with the majority's conclusions except for my colleagues' discussion surrounding Corona-Rocha's claim that "new evidence" now exists that warrants reconsideration of his case.
 
 
 21
 Ramirez-Gonzalez v. INS, 695 F.2d 1208 (9th Cir. 1983), makes it very clear that to bring a claim based upon new evidence, "[petitioners must submit motions to repoen to the BIA and state the new facts to be proved at the reopened hearing." Id. at 1213. Corona-Rocha has not done so, and we should not consider his claim.
 
 
 22
 The majority acknowledges this, stating that "the most we can do is suggest that Corona-Rocha file a motion to reopen his case before the BIA." One may wonder why judges providing impartial review should give advice to a litigant -- especially one represented by counsel of his choice. But the majority did not stop there. Well before providing legal advice on what the majority believes is the proper procedure for Corona-Rocha to follow, the majority engages in a protracted and inappropriate discussion of the new "evidence" presented by Corona-Rocha in his appellate bried. Rather than chastising petitioner for inserting alleged facts which appear nowhere in the record, the majority discusses there as if properly before us, and then appears to rule on the merits of this unfounded presentation.
 
 
 23
 Almost one-third of the majority's disposition is dedicated to discussing these so-called facts of Corona-Rocha's new evidence. That is unnecessary. I suggest it is also inappropriate, because the disposition appears to accept as true every allegation made by Corona_Rocha, without an evidentiary hearing to find out what the facts really are.
 
 
 24
 But the discussion of the facts does not end the majority's unnecessary venture. In the culminating paragraph of this discussion, the majority states: "We believe that the events that have occurred in Corona-Rocha's life over the last six years may well tip the balance of equities in his favor." One may wonder where our court secures the authority, based upon untested assertions in an appellate brief, to evaluate the merits of Corona-Rocha's new evidence claim. The citation to Ramirez-Gonzales immediately following this does not show such authority; that case holds that such petitions are to be made to the Board.
 
 
 25
 Then, if the majority has no power to do what it is doing, what is the purpose? Perhaps the majority wishes to give legal advice to one of the parties. But by what authority? Can it be that the majority wishes to supplant the attorney chosen by petitioner? Perhaps so because in appellant's reply brief, Corona-Rocha's attorney asserts that because the Board has a "long history" of denying motions to reopen, asking Corona-Rocha to do so her is akin to making him engage in a "fruitless effort." Where a lawyer has, as seen by his own reply brief, been aware of the procedure to reopen his client's case, and has made a reasoned judgment that such a motin would not succeed, I am at a loss for any supportable law which allows this court to direct an attorney to file a motion he has concluded is not in the best interests of his client.
 
 
 26
 On the other hand, it may be that the majority wishes to influence the outcome of any such motion. Once more -- by what authority? Our separation of powers doctrine has forbidden encroachment of the executive on the judiciary. Similarly, it forbids our encroachment on the executive function. The Board will carry out its proper role if and when petitioner moves to reopen. It should not, and must not, be influenced by unauthorized prejudgment.
 
 
 27
 Similarly, if we review a denial of that motion, we should not be influenced by unauthorized evaluations outside the record. Otherwise, our impartiality will be properly questioned.
 
 
 28
 For these reasons, I cannot joint my colleagues' comments in part c dealing with the so-called new evidence.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This section was numbered Sec. 241(a)(11) before the 1990 amendments to the Act
 
 
 [2]
 The BIA took nearly five years to issue its opinion
 
 
 [3]
 28 U.S.C. Sec. 2347(c) (1994) provides that courts of appeals may remand cases to agencies for consideration of newly discovered evidence. Corona-Rocha is correct in suggesting that other circuits apply this law to immigration cases. The Third, Fifth, Sixth, Seventh and Tenth Circuits all have the power to remand to the BIA for reconsideration of new evidence. See Matinez de Mendoza v. INS, 567 F.2d 1222, 1226 (3rd Cir.1977); Bernal-Gacia v. INS, 852 F.2d 144, 147 (5th Cir.1988); Delores v. INS, 772 F.2d 223, 226 (6th Cir.1985); Osaghe v. INS, 942 F.2d 1160, 1164 (7th Cir.1991); Becerra-Jimenez v. INS, 829 F.2d 996, 1001 (10th Cir.1987)