**Evgeni REZNIK, Genrietta Reznik**

v.

**U.S. DEPARTMENT OF JUSTICE, IMMIGRATION & NATURAL-IZATION SERVICE.**

**No. 94–CV–3035.**

United States District Court,
E.D. Pennsylvania.

March 28, 1995.

Lawrence H. Rudnick, Philadelphia, PA, for plaintiff.

Barbara Koppa Gerolamo, U.S. Attorney's Office, Philadelphia, PA, Thomas W. Hussey, Office of Immigration Litigation Civil Division, U.S. Department of Justice, Washington, DC, for defendant.

## MEMORANDUM

WALDMAN, District Judge.

Plaintiff Evgeni Reznik is a Ukrainian national residing in Odessa. Plaintiff Genrietta Reznik is his mother and a lawful permanent resident of the United states, now living in Philadelphia. Plaintiffs challenge a denial by the Immigration and Naturalization Service ("INS") in Moscow of Mr. Reznik's application for a waiver of an applicable ground of excludability from the United States. In his case, the applicable ground for exclusion was a murder conviction.

Presently before the court is defendant's Motion to Dismiss or for Summary Judgment and plaintiff's Cross-Motion for Summary Judgment.[1] The facts pertinent to a resolution of the motions are not in dispute.

On December 27, 1990, Mr. Reznik applied with his parents and siblings for refugee status to the INS in Moscow on the ground of persecution because they were Jewish. The family except for Mr. Reznik were granted refugee status.

On an application for refugee status, an applicant is required to note any classification for exclusion from the United States which may apply. In response, Mr. Reznik revealed that he was convicted by court martial of homicide and attached a translation of the report of the proceeding which shows the following.

During his service as a special vehicle operator in the Soviet army, plaintiff was harassed and abused by one Corporal Kazankov. On March 7, 1977, Kazankov asked Mr. Reznik to repair a transistor radio. When Mr. Reznik told Kazankov that the radio was beyond repair, he berated and struck Reznik and threatened that if he did not finish the work satisfactorily by morning, the Corporal would "finish off" Reznik. Shortly thereafter, Mr. Reznik entered a vehicle where Kazankov was resting and fatally struck him six or seven times in the head with an axe handle.

Mr. Reznik was examined by psychiatrists who determined that he did not suffer from any psychiatric disorder and was responsible for his actions. Reznik admitted killing Kazankov and the military tribunal found him guilty of premeditated homicide. In sentencing Mr. Reznik, the tribunal considered the "grave consequences" of the crime, that Mr. Reznik "repents open-heartedly of his deed" and "the illegitimate deeds of [the] victim." Mr. Reznik was sentenced to eight years in a penal colony and was required to pay for the cost of the psychiatric examinations. After serving three years of his sentence, plaintiff was discharged by decision of the People's Court of Semiozersk district, Kustanay region on March 26, 1980 and his criminal record was expunged.

Mr. Reznik's application for refugee status was returned marked "denied 212(a)(9) murder." Mr. Reznik then wrote three letters,

---

1. Because both parties have submitted material beyond the pleadings and because that material amplifies the bases for defendant's arguments in favor of dismissal, the court will consider its motion as one for summary judgment.

two of them undated, to the INS in Moscow requesting reconsideration. In his second letter, he detailed the discrimination he suffered while serving in the Soviet Army.

In a third letter of February 25, 1992, Mr. Reznik provided "new evidence" regarding the killing of Kazankov. For the first time in the process, he claimed that the facts were fabricated by the court martial and that he actually acted in self defense in killing Kazankov who was wielding the axe in a struggle after he and other soldiers raped plaintiff.

On February 11, 1993, the INS decided that "[b]ased on the statements made and the evidence submitted," Mr. Reznik "failed to establish eligibility for a waiver" and his request for reconsideration was denied. On April 5, 1993, Mr. Reznik submitted through counsel to the INS in Moscow a Form I–T02 application for a waiver of the ground of excludability. By letter of March 21, 1994, the Officer in Charge denied the waiver application.[2]

Plaintiffs ask the court to grant the waiver application or direct the INS to conduct further proceedings and to award plaintiff attorney's fees.[3] Defendant contends that the court lacks subject matter jurisdiction, that plaintiffs lack standing and have failed to assert a cognizable claim, and that the INS properly denied Mr. Reznik entry into the United States. Plaintiffs seek judgment on the ground that the INS gave no legitimate reason for its decision to deny the waiver which was arbitrary and capricious.

Plaintiff applied for refugee status under the overseas admission regime of 8 U.S.C. § 1157(c)(1) and for a waiver of the ground of excludability under § 1157(c)(3). Section 1157 provides the sole procedure whereby aliens outside the United States may apply for refugee status. Aliens physically present within the United States or at a land border or port of entry may invoke the asylum procedure of 8 U.S.C. § 1158.

■ Plaintiffs assert that the court has subject matter jurisdiction to review the denial of the waiver pursuant to 8 U.S.C. § 1329 and 28 U.S.C. § 1331.

The Immigration and Nationality Act ("INA") provides that the "district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of this subchapter." 8 U.S.C. § 1329. Section 1329 appears in subchapter II, entitled "Immigration." Section 1157(c), dealing with admission of refugees and waivers of grounds of excludability, and § 1182(a), providing the grounds for exclusion, are also found in subchapter II. It would appear from the very broad statement in § 1329 that the court would have subject matter jurisdiction to review decisions made pursuant to § 1157(c) to the extent that a right of action exists. See *Abourezk v. Reagan*, 785 F.2d 1043, 1050 (D.C.Cir.1986); *Karmali v. United States Immigration and Naturalization Service*, 707 F.2d 408, 409–10 (9th Cir.1983); *Acosta v. Gaffney*, 558 F.2d 1153, 1155–56 (3d Cir.1977). Such a right of action could arise from the constitution, the INA or the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706.

■ It is well settled that an "unadmitted and nonresident alien" has no constitutional right of entry into the United States as a nonimmigrant or otherwise. *Kleindienst v. Mandel*, 408 U.S. 753, 762, 92 S.Ct. 2576, 2581, 33 L.Ed.2d 683 (1972).

Plaintiffs' reliance on *Mandel* for the proposition that the court may review the denial of Mr. Reznik's request for a waiver is misplaced. In that case, Ernest Mandel, a Belgian Marxist, applied to the U.S. Consul in Brussels for a temporary visa to enter the United States to speak at a conference at Stanford University. The application was denied on the ground that Mandel advocated doctrines of world communism. When a request for a waiver was denied by the Department of State in Washington, Mandel and several American citizens who had invited him to speak filed suit against the Attorney

2. In that waiver application plaintiffs' attorney stated that Mr. Reznik had been granted refugee status but was excluded because he had committed a crime of moral turpitude.

3. Plaintiffs do not specify what further proceedings they have in mind.

General and the Secretary of State. The issue presented in *Mandel* was whether the denial of entry violated the First Amendment rights of the American scholars and students who had invited Mr. Mandel to speak. Id. at 754, 92 S.Ct. at 2577. The Court made clear that it was deciding only the issue of whether the First Amendment conferred upon the American hosts the right to compel the Attorney General to allow the admission of an alien to the U.S. because they wish to hear him speak. Id. at 762, 92 S.Ct. at 2581. The instant case involves a decision abroad to deny a request for permanent entry for reasons unrelated to the views held or expressed by the applicant or to the exercise by citizens of their constitutional rights. See also *Burrafato v. U.S. Dept. of State*, 523 F.2d 554, 556–57 (2d Cir.1975) (U.S. citizen has no constitutional right to challenge Consul's denial of alien spouse's visa).

The INA and the Refugee Act do not create a cause of action or provide for administrative or judicial review of decisions under § 1157(c). Plaintiffs concede that no direct statutory cause of action exists but argue that § 1329 permits judicial review of agency decisions under the APA. There are no procedures for administrative appeal within the INS for denials of refugee status, see 8 C.F.R. § 207.4 (1994), or for denials of waivers under § 1157(c). See 8 C.F.R. § 207.3(b) (1994). Plaintiffs dismiss as dictum the statement of the Court in *Haitian Refugee Center, Inc. v. Baker*, 953 F.2d 1498, 1506 (11th Cir.), cert. denied 502 U.S. 1122, 112 S.Ct. 1245, 117 L.Ed.2d 477 (1992) that there is no provision for judicial review of decisions made pursuant to 8 U.S.C. § 1157. A reading of the opinion shows that the discussion of § 1157 was pertinent to the holding of the case.

The Haitian Refugee Center ("HRC") sued the Secretary of State and others for declaratory and injunctive relief to prevent the repatriation of Haitians until adequate procedures were implemented to determine qualifications for asylum. The HRC relied upon the INA and the Refugee Act of 1980 generally. The Court assumed that the HRC intended to invoke 8 U.S.C. § 1253(h) which prohibits deportation or return of an alien if

the Attorney General determines that the alien's life or freedom would be threatened because of race, religion, nationality or political views. The Court held that the INA provides the exclusive avenue for judicial review of asylum and deportation claims, precluding application of the APA, and that such review is available only to aliens physically present in the United States or at its borders or ports. Id. at 1505–06. See also *Sale v. Haitian Centers Council, Inc.*, —— U.S. ——, ——, 113 S.Ct. 2549, 2562, 125 L.Ed.2d 128 (1993) (§ 1253(h) has no application ·to actions taken abroad); *Cuban American Bar Ass'n, Inc. v. Christopher*, 43 F.3d 1412, 1425–26 (11th Cir.1995).

The Court in *Baker* proceeded to discuss s 1157 which applies to refugees seeking admission from abroad. It noted that there are no statutory procedures for review of decisions under § 1157 and concluded that this was not an oversight by Congress which provided for such review under § 1158 and § 1105a. The Court concluded that Congress did not intend to extend judicial review to aliens abroad. *Baker*, 953 F.2d at 1506.

■ The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C.A. § 702. Judicial review under the APA is not available, however, where "statutes preclude judicial review; or agency action is committed to agency discretion by law." 5 U.S.C.A. § 701(a).

■ That § 1157(c) does not provide for judicial review does not necessarily mean that it precludes judicial review. The court must consider the entire statutory scheme enacted by Congress in deciding whether a statute precludes judicial review for purposes of the APA. *Block v. Community Nutrition Institute*, 467 U.S. 340, 345, 104 S.Ct. 2450, 2453, 81 L.Ed.2d 270 (1984).

The court finds persuasive the determination of the Court in *Baker* that there is no judicial review under the APA of a decision under s 1157. Plaintiffs can cite no instance of judicial review of a waiver decision made abroad regarding a foreign national.

■ Even deportation decisions involving aliens in the United States are not subject to review under the APA. See *Ardestani v. Immigration and Naturalization Service,* 502 U.S. 129, 132–34, 112 S.Ct. 515, 518–19, 116 L.Ed.2d 496 (1991); *Marcello v. Bonds,* 349 U.S. 302, 310, 75 S.Ct. 757, 762, 99 L.Ed. 1107 (1955) That Congress provided for administrative and judicial review of some decisions under the INA, while making no such provision regarding refugee decisions abroad strongly suggests that Congress did not intend to permit judicial review in such cases. Persons within our shores are accorded due process and other legal rights. It is entirely rational for Congress to decide against federal court review of the myriad of immigration decisions made abroad.[4]

Plaintiffs' reliance on *Abourezk* to establish a right to review under the APA is unpersuasive. All plaintiffs in the consolidated cases in *Abourezk* were U.S. citizens who invited aliens from Nicaragua, Cuba and Italy to speak in the United States. The State Department denied visas to the aliens under then § 1182(a)(27) apparently because of their political views and affiliations. Plaintiffs sued claiming that the decisions exceeded the Department's statutory authority and violated plaintiffs' First Amendment rights. The Court held that as individuals interested in engaging in "open discourse" with the foreign invitees, plaintiffs suffered an injury in fact by reason of the challenged agency action and were in the zone of interests regulated by the statute. Id. at 1050–51. The Court found it significant that plaintiffs were U.S. citizens, that the claims concerned decisions of the State Department here rather than abroad and that a constitutional claim was presented. *Abourezk,* 785 F.2d at 1051 n. 6.

Plaintiffs' reliance on *Acosta v. Gaffney,* 558 F.2d 1153, 1156 (3d Cir.1977) is also misplaced. The Court in *Acosta* found that an infant United States citizen had standing to contest the deportation of her parents. The reason, however, was that the contested action would have resulted in the de facto deportation of the infant citizen. It does not follow that a permanent resident has standing to challenge a decision made abroad to deny a waiver request of her adult alien son.

Plaintiffs also read too much into *Mandel* in arguing that the INS failed to provide a "facially legitimate reason" for its denial of the waiver application. The Court in *Mandel* held that "when the Executive exercises [the power to exclude aliens] negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant." 408 U.S. at 770, 92 S.Ct. at 2585. The standard of review adopted in *Mandel* applies only to such a constitutional claim. Id. Moreover, the Court did not hold that a decision denying a waiver should be judicially overturned whenever the INS fails to state a facially legitimate reason at the time of the denial, even if a legitimate reason for the denial exists and appears of record.

It clearly appears that there was a legitimate reason for the denial of plaintiff's application and that it was fairly communicated to him. The INS did not act arbitrarily. It made clear that it had denied his application because of a murder conviction and it determined that the applicant had failed to establish eligibility for a waiver based on a review of the statements and evidence he presented.

■ Plaintiffs argue that since exclusion under § 1982(a) for a crime of moral turpitude is waivable, it is inappropriate to deny a waiver because of the commission of such a crime. They point to nothing, however, which bars the INS from weighing the nature and circumstances of a crime along with the usual family and humanitarian considerations implicated by a waiver request. Moreover, a review of the statutory scheme involving the exclusion for crimes of moral turpitude and murder in particular supports

---

4. In one recent year the INS received refugee requests abroad from 121,967 residents of the former Soviet Union and scheduled 81,691 inter-views in Moscow. Statistical Yearbook of the Immigration and Naturalization Service (Oct. 1993), pp. 73–74.

defendant's position that a murder conviction effectively bars entry.

Congress granted the President and Attorney General wide discretion in determining the admission of refugees to the United States. The "Attorney General may, in the Attorney General's discretion and pursuant to such regulations as the Attorney General may prescribe, admit any refugee who is not firmly resettled in any foreign country, is determined to be of special humanitarian concern to the United States, and is admissible except as otherwise provided under paragraph (3) as an immigrant under this chapter." 8 U.S.C.A. § 1157(c)(1) (Supp.1995) [emphasis added].

■ Congress mandated that there are certain aliens "who are ineligible to receive visas and who shall be excluded from admission into the United States." 8 U.S.C.A. § 1182(a) (Supp.1995). If an alien falls into one of the excludable classifications, he is not admissible unless the ground for exclusion is waived. Among those so excludable are aliens who are convicted of or admit to having committed a crime involving moral turpitude. 8 U.S.C. § 1182(a)(2)(A)(i)(I) (Supp. 1995).[5]

■ Section 1182(a)(2)(F) authorizes a waiver of the ground of exclusion of a conviction for a crime of moral turpitude. Plaintiffs, however, overlook or fail to note § 1182(h) which expressly provides that "[n]o waiver shall be provided under this subsection in the case of an alien who has been convicted of (or who has admitted committing acts that constitute) murder ... or an attempt or conspiracy to commit murder."[6] Section 1157(c)(1) requires that a refugee be admissible and provides specific exceptions, none of which apply to plaintiff.

The Attorney General may grant a waiver of a ground of excludability under § 1182(a) "with respect to such alien for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest. Any such waiver by the Attorney General shall be in writing and shall be granted only on an individual basis following an investigation." 8 U.S.C. § 1157(c)(3). Section 1157(c)(3) does not prohibit waiver of the ground of exclusion of conviction for a crime of moral turpitude.

This does not require defendant, however, to ignore § 1182(h) when deciding whether to waive a conviction for murder pursuant to § 1157(c).[7] It is quite unlikely that Congress contemplated allowing an alien permanently to enter the country as a "refugee" whom it had barred from obtaining an entry visa even for a short visit. If plaintiff had reached the United States, he would have been denied asylum as a refugee. See 8 U.S.C. § 1158(d) (Supp.1995) (alien convicted of "aggravated felony" may not apply for or be granted asylum).[8] It is extremely unlikely that Congress contemplated the grant of a waiver to an alien abroad which he could not obtain had he entered the country seeking asylum.

Throughout the INA, Congress has expressed a clear intent to exclude aliens convicted of murder. The INS did not act unlawfully or arbitrarily in denying Mr. Reznik's requests.

It appears from the record presented that defendant acted properly within the discretion provided to it by law and that plaintiffs are not entitled to the relief they seek in this action. Accordingly, defendant's motion will be granted and plaintiffs' motion will be denied.

Appropriate orders will be entered.

---

**5.** The statute provides two exceptions not relevant to this case. See 8 U.S.C.A. § 1182(a)(2)(A)(ii) (Supp.1995).

**6.** A pardon, an expungement of a criminal record or other act of clemency by a foreign authority does not remove a criminal conviction as a ground of ineligibility for entry. 22 C.F.R. § 40.21(a)(5).

**7.** It may be noted that the classes of aliens for whom waiver is expressly barred by § 1157(c)(3), e.g., terrorists, Nazi war criminals, suspected

saboteurs, had not been expressly precluded from securing a waiver by § 1182. Aliens who have admitted to or been convicted of murder were.

**8.** The term "aggravated felony" includes murder and crimes of violence for which a term of imprisonment of five years or more was imposed, regardless of any suspension, and applies to such offenses in violation of foreign law when a term of imprisonment was completed within the prior fifteen years. 8 U.S.C. § 1101(a)(43).

ORDER

AND NOW, this __ day of March, 1995, upon consideration of defendant's Motion for Summary Judgment and plaintiffs' Cross-Motion for Summary Judgment, and the respective responses thereto, consistent with the accompanying memorandum, IT IS HEREBY ORDERED that plaintiffs' Motion is DENIED, defendant's Motion is GRANTED, and accordingly JUDGMENT is ENTERED in the above case for defendant and against plaintiffs.

ORDER

AND NOW, this __ day of March, 1995, upon consideration of defendant's Motion to Dismiss, IT IS HEREBY ORDERED that said Motion is DENIED as moot.